[No. C020115. Third Dist. Jan. 29, 1998.]

In re the Marriage of CANDYCE and JOHN D. PERRY.
CANDYCE PERRY, Respondent, v.
JOHN D. PERRY, Respondent;
MARY JANE SCHNEPF, Appellant.

**[Opinion certified for partial publication.\*]**

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part IV.

## COUNSEL

Hugh O. Allen and Robert S. Gerstein, for Appellant.

MacKenzie & Brody and Roderick MacKenzie for Respondent Wife.

Sinclair, Wilson & Bedore, Larry P. Sinclair and John M. Sinclair for Respondent Husband.

April Maynard for Minor.

## OPINION

**SCOTLAND, J.**—After successfully moving to be joined as a party to this marital dissolution action in order to seek custody of her grandson, appellant Mary Jane Schnepf engaged in a prolonged, bitter and expensive legal battle against the child's father. Following lengthy discovery and 14 days of trial, the court decided the child would remain in father's custody, with Schnepf continuing to have visitation with the child, and ordered Schnepf to pay the following: the portion of the compensation and expenses of counsel appointed by the court to represent the child that was attributable to "claims made by [Schnepf] in this action"; attorney fees and costs incurred by her former son-in-law as a result of Schnepf's claims; and the costs of counseling for the child. Schnepf appeals from these orders.

In the published portion of this opinion, we address Schnepf's contentions that (1) the trial court had no legal basis for ordering her to pay the cost of court-appointed counsel for the child incurred to address Schnepf's request for custody; (2) the court erred in ordering her to pay the attorney fees and costs incurred by her former son-in-law as a result of Schnepf's efforts to obtain custody of the child from him; and (3) the court had no authority to order her to pay the cost of her grandchild's counseling. Only the last contention has merit.

Family Code section 3153 provides that, when the trial court appoints private counsel to represent the interests of a minor child during custody or visitation proceedings of a marital dissolution action (Fam. Code, § 3150), the court may order "the parties" to pay an amount for the reasonable compensation and expenses of court-appointed counsel for the child, except that the court may order the county to cover any portion "both parties together" are financially unable to pay. (Further section references are to the Family Code unless otherwise specified.) We reject Schnepf's claim that the

compensation requirement of section 3153 applies only to parents of the child for whom the court has appointed counsel. As we will explain, despite an ambiguity in the statute, the section applies to *all* parties, including a grandparent who has joined the action to seek custody of, or visitation with, a grandchild.

Section 2030 provides that, in a marital dissolution action, the court may order "any party, except a governmental entity," to pay a reasonable amount of attorney fees and costs incurred by another party to maintain or defend the action, but that an order requiring "a party who is not the spouse of another party to the proceeding" to pay such fees and costs shall be "limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." For reasons which follow, we find no merit in Schnepf's contention that this section does not apply to a "nonspouse," like her, who joins the action to "defend the rights of children." Rather, we conclude the section applies, as it plainly says, to *any* party other than a government entity, including a grandparent who has joined the action to seek custody of, or visitation with, a grandchild.

Section 3103, subdivision (g) provides that, when the trial court in a marital dissolution action orders grandparent visitation with a minor child, the court may order the parent or grandparent "to pay to the other" an amount for "costs related to visitation," such as transportation and "basic expenses" for the child, like "medical expenses, day care costs, and other necessities." We shall explain that, although in certain circumstances counseling for a child may be a cost related to visitation within the meaning of the statute, Schnepf correctly contends the court erred in ordering her to pay the counseling expenses in this case. Construing section 3103, subdivision (g) to apply to costs which are essential to facilitate visitation or became essential during visitation, we find no substantial evidence that the counseling for Schnepf's grandson satisfies either requisite.

In the unpublished portion of this opinion, we reject Schnepf's remaining argument.

Accordingly, we shall reverse the order that Schnepf pay the costs of her grandson's counseling, and otherwise affirm the trial court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

Although the trial judge described this as "the most bitterly, extensively fought child custody case [he] can ever recall in Placer County," very few of its underlying facts are relevant to the contentions on appeal. Hence, we provide a relatively brief summary.

John D. Perry (father) and Candyce Perry (mother) married in 1987, when their only child, John Jr., was almost two years old. They separated in 1989, and mother filed a petition for dissolution of marriage in 1990. John Jr. initially was placed in the custody of his maternal grandmother and her husband, Mary Jane and Fred Schnepf, when allegations were made that both parents abused illicit drugs. Restraining orders were issued based upon father's physical abuse of mother; Attorney April Maynard was appointed to represent John Jr.'s interests during the marital dissolution proceeding; and mother and father agreed to undergo psychological evaluation.

The psychological evaluation, completed in October 1990, reported the parties "describe a rather tumultuous relationship involving physical fighting, drug usage, frequent separations and reconciliations, and the significant involvement of [the maternal grandparents] in [John Jr.'s] life." Noting deficiencies in both parents, the psychologist recommended a temporary custody arrangement in which the child would live with father during the school year and with mother during the summer vacation, with a reevaluation made at the end of that summer.

In November 1990, mother and father stipulated that John Jr. would reside in father's home until the end of the school year in 1991, and mother would have substantial visitation. The stipulation, which was endorsed by Maynard on behalf of the child, was made an order of the court.

In June 1991, the court approved a new stipulation in which mother and father agreed to joint legal custody of John Jr., with father to have primary physical custody and mother to have visitation. The stipulation further provided that mother and father would undergo additional psychological evaluation and that mother would submit to periodic drug testing.

In October 1991, the court ordered grandparent visitation for the Schnepfs, who later sought to be joined as parties in the marital dissolution action in order to seek custody of, or continued visitation with, John Jr. The court granted the request for joinder and extended Maynard's appointment to represent the child's interests. Interim custody and visitation orders were continued, with mother's visitation to be supervised by the Schnepfs or by another adult person acceptable to father.

The Schnepfs ultimately moved for an order granting them custody of John Jr. on the ground "it would be detrimental for [the child] to stay in the custody of his father." Mary Jane Schnepf (grandmother) declared that father had destroyed property, had physically abused mother, and had a "strained" and emotionally unsuitable relationship with John Jr. In opposing the motion, father asked the court to terminate the Schnepfs' visitation and order them to pay father's attorney fees.

Pending the hearing on their requests, the parties engaged in heated discovery disputes, including demands for additional psychological evaluations; contempt proceedings; efforts to disqualify Maynard, the attorney for the child; conflicts over interim custody and visitation; requests for continuances; and a writ proceeding in this court. At one point, a psychologist concluded that the ongoing conflict among mother, father and the Schnepfs was having an adverse effect on John Jr.'s functioning. In the psychologist's opinion, "the hostility and the expressions of hostility between [the child's] parents and grandparents to which he has been exposed is the primary detrimental factor in his development." Sometime prior to the hearing, Fred Schnepf died of cancer.

Trial of the issues raised by the competing custody requests spanned 14 days. Witnesses included the parties, John Jr.'s teachers and day-care providers, and four mental health experts who had either treated John Jr. or evaluated him.

After finding that a grant of custody to mother would be detrimental to John Jr. due to mother's continuing drug problems and her "propensity to form live-in relationships with physically abusive men," the court found father's "deficiencies fall short of being so detrimental to the child [that the] court would be required to place the child with a nonparent." In this regard, the court found father had taken steps to change his lifestyle, including curtailing his use of drugs and violence toward mother; had participated in therapy "both in his own behalf and on behalf of the child"; had been involved with the school system in the education and development of the child; had "maintained a consistent and responsible job and . . . a home that meets at least the basic needs of the family"; and had been "cooperative with the mother and the grandmother in visitation arrangements." The court also noted a psychologist had testified that removal of John Jr. from father's custody would be detrimental to the child in a number of respects. Accordingly, the court awarded legal and physical custody of John Jr. to father, with visitation to mother and grandmother.

Observing that grandmother testified "she would 'stand by her grandchild' and assist financially to secure continued counseling on an individual basis for the minor child, as well as any necessary tutoring which the child might require," the court indicated it did not have jurisdiction to order her to do so but expressed a hope that she will "stand by her testimony" and voluntarily provide such assistance.

After further hearings on the attorney fee requests made by father and by Maynard as counsel for John Jr., the court ordered grandmother to pay

$45,000 in attorney fees and $25 in costs for services rendered by Maynard on behalf of the child "on issues relating to claims made by [grandmother] in this action." The court further ordered grandmother to pay $69,950.87 in attorney fees and costs incurred by father as a result of grandmother's claims.

Later, in a series of supplemental orders, the court ordered grandmother to pay "all accrued costs of counseling" which had been provided by John Jr.'s therapist, as well as the future cost of counseling services as recommended by the therapist or until further order of the court. In this regard, the court stated: "It is very clear to the court that [the child] needs the services of the therapist. It is equally clear that [grandmother], despite all of her concerns regarding her financial obligations, remains as the only party with sufficient income and assets for the payment of such costs. Although [grandmother] apparently has withdrawn her request for custody, it is important to point out that this court and several psychologists [have concluded grandmother is] both an important ingredient in the [child's] life and a contributing factor to his emotional problems. If she wishes to continue to be involved in the child's life, she will continue to have an obligation to provide counseling services. The emotional damage suffered by this child at the hands of the three parties will not end merely because one party no longer chooses to engage in the fight."

In addition, the court ordered Maynard to continue to represent the child and directed grandmother to pay Maynard's fee for future services not to exceed four hours per month without prior court approval, unless it involved "legal work required in connection with a motion filed by any other party."

## DISCUSSION

### I

Attorney Maynard was appointed by the court to represent John Jr. pursuant to section 3150, which provides: "(a) If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding. [¶] (b) Upon entering an appearance on behalf of a child pursuant to this chapter, counsel shall continue to represent that child unless relieved by the court upon substitution of other counsel by the court or for cause." (Stats. 1993, ch. 219, § 116.85.)

The compensation of such a court-appointed counsel is governed by section 3153, which provides: "(a) If the court appoints counsel under this

chapter to represent the child, counsel shall receive a reasonable sum for compensation and expenses, the amount of which shall be determined by the court. Except as provided in subdivision (b), this amount shall be paid by the parties in the proportions the court deems just. [¶] (b) Upon its own motion or that of a party, the court shall determine whether both parties together are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this chapter, and the portion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county. The Judicial Council shall adopt guidelines to assist in determining financial eligibility for county payment of counsel appointed by the court pursuant to this chapter." (Stats. 1992, ch. 162, § 10, p. 549.)

Claiming the "history of the obligation to pay the fees of counsel representing the independent interest of minors . . . is founded in the obligation of parents to support their children," grandmother contends the language of section 3153 limits its application to, in her words, "parties who have an obligation to support the child: the parents." Therefore, she argues, the trial court had no basis in law to order her to pay the portion of Maynard's compensation and expenses specified by the court, even though it was incurred to address grandmother's request for custody of the child. The contention fails for reasons which follow.

In construing a statute, a court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) To determine legislative intent, we first examine the words of the statute (*ibid.*), applying "their usual, ordinary, and common sense meaning based upon the language the Legislature used and the evident purpose for which the statute was adopted." (*In re Rojas* (1979) 23 Cal.3d 152, 155 [151 Cal.Rptr. 649, 588 P.2d 789].) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the words of the statute are ambiguous, a court may resort to "extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*People* v. *Coronado, supra*, at p. 151.) Applying these rules of statutory interpretation, a court " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*) Accordingly, language of a statute will not be given literal meaning if it would result in absurd consequences the Legislature did not intend. (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899

[276 Cal.Rptr. 918, 802 P.2d 420].) The intent of the statute "prevails over the letter, and the letter will, if possible, be read so as to conform to the spirit of the act." (*Lungren* v. *Deukmejian, supra*, at p. 735.)

As previously noted, when the court appoints counsel to represent a child on issues of custody or visitation raised in a marital dissolution proceeding, section 3153, subdivision (a) authorizes the court to order the compensation and expenses of court-appointed counsel to be paid "by the parties" in proportions the court deems just.

A grandparent may be joined as a "party" in a marital dissolution proceeding to seek custody of, or visitation with, a grandchild. (§ 3040, subd. (a)(2), (3) [authorizing custody to nonparent]; *In re Volkland* (1977) 74 Cal.App.3d 674 [141 Cal.Rptr. 625] [custody to grandparent]; §§ 3103, 3104 [authorizing visitation to grandparent]; Cal. Rules of Court, rules 1211, 1252(b), 1254(a) [joinder of a nonparent as "party"]; *In re Marriage of Meier* (1975) 51 Cal.App.3d 120, 123, fn. 3 [123 Cal.Rptr. 822] [joinder of grandparent as party]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1997) ¶¶ 7:11, 7:430, pp. 7-4, 7-121.)

 Because persons other than a parent of the child for whom an attorney has been appointed in a marital dissolution action may become "parties" in the action, the phrase "by the parties" in section 3153, subdivision (a), standing alone, is *not* susceptible to the interpretation urged by grandmother, i.e., the compensation requirement of section 3153 applies only to parents of a child for whom an attorney has been appointed.

However, the phrase "by the parties" becomes ambiguous when viewed in context with subdivision (b) of section 3153, which provides that, when the court determines "*both* parties together" are unable to pay all or a portion of the compensation and expenses of court-appointed counsel, it shall be paid by the county. (Italics added.) When used as an adjective, "both" means "the one and the other; referring to two specially designated persons or things, implying that two and no more are so designated[.]" (Oxford English Dict. (1978) p. 1012; Webster's New Internat. Dict. (3d ed. 1986) p. 258 ["being the two: involving the one and the other"].)

Noting that statutory provisions relating to the same subject matter must be harmonized to the extent possible, grandmother contends the phrase "both parties" in subdivision (b) of section 3153 limits the phrase "by the parties" in subdivision (a) of the section to two parties, which necessarily must mean the mother and father of the child.

As we shall explain, her construction of the statute is inconsistent with its purpose and with the legislative history of the amendment that added subdivision (b) to section 3153.

The provisions of section 3153 are derived from former Civil Code section 4606. (Stats. 1992, ch. 162, §§ 2, 10 [repealed and reenacted as amended in §§ 3150 through 3153].) The former statute was enacted in 1976, after commentators had expounded on the need for independent legal representation of children in marital dissolution proceedings where the children's interests in issues of custody and visitation are at stake. (See *Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 659, fn. 10 [165 Cal.Rptr. 877, 612 P.2d 967].) As originally enacted, the former statute (1) provided that, when the question of custody or visitation arises in a marital dissolution proceeding, the court may appoint private counsel to represent a child if such representation is in the child's best interests, and (2) specified that court-appointed counsel for the child shall receive a reasonable sum for compensation and expenses, which "shall be paid" by "the parents" in proportions the court deems just. (Stats. 1976, ch. 588, § 1, p. 1427.)

The language of the original statute is unambiguous, and the intent of the Legislature in enacting it is readily apparent without resort to legislative history. (Cf. *Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970] [only when statutory language is susceptible to more than one reasonable interpretation do we look to legislative history in construing the statute].) The first part of former Civil Code section 4606 obviously was intended to protect children, as urged by commentators. The second part of the statute obviously was intended to ensure that an attorney appointed by a court to represent a child in a marital dissolution proceeding would receive reasonable compensation. (See *In re Marriage of Lisi* (1995) 39 Cal.App.4th 1573, 1576 [46 Cal.Rptr.2d 623].) Equally apparent is the legislative intent that the parents of the child, rather than the taxpayers, must be required to compensate the child's appointed counsel.

In 1988, the Legislature amended former Civil Code section 4606 to specify that the compensation and expenses of court-appointed counsel for a child shall be paid by "the parties" in proportions the court deems just. (Stats. 1988, ch. 153, § 1, p. 571.) Again, the language used is unambiguous, and the intent of the Legislature in amending the statute is readily apparent without resort to legislative history. At the time of the amendment, it was well-recognized that persons other than parents could become parties in a marital dissolution action.. (See discussion, *ante*.) We presume the Legislature was aware of this and amended the statute accordingly. (*Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].) Therefore, by replacing the word "parents" with the word "parties," the Legislature obviously intended that the obligation to compensate counsel appointed to represent a child in a marital dissolution proceeding must be borne by all the parties to the action, not just those who are the child's

parents. (Cf. *Sacramento Typographical Union No. 46* v. *State of California* (1971) 18 Cal.App.3d 634, 638 [96 Cal.Rptr. 194] [a material change in the phraseology of a statute ordinarily is viewed as showing a legislative intent to change the meaning of the statute].)

The Legislature's intent to expose all the parties, rather than just the parents, to the cost of court-appointed counsel for the child is further indicated by the fact that the 1988 amendment to former Civil Code section 4606 was akin to a change the Legislature already had made to another statute addressing attorney fees and costs in marital dissolution actions. Pursuant to former Civil Code section 4370, the trial court had discretion to order the "husband or wife, or father or mother, as the case may be," to pay a reasonable amount for attorney fees and costs incurred in the prosecution or defense of the proceeding. (Stats. 1970, ch. 311, § 1, p. 705.) In 1981, this section was amended to specify that the court may order "any *party*, except a governmental entity," to pay reasonable attorney fees incurred in maintaining or defending the marital dissolution proceeding. (Stats. 1981, ch. 716, § 1, p. 2816, italics added.) The amendment was construed in 1986 to apply to "nonspouse parties" joined in the proceeding. (*In re Marriage of Siller* (1986) 187 Cal.App.3d 36, 44 [231 Cal.Rptr. 757].) We presume the Legislature was aware of this construction of the word "parties" in the context of attorney fees and costs in marital dissolution proceedings. (*Estate of McDill*, *supra*, 14 Cal.3d at p. 839.) Accordingly, when the Legislature later made a like amendment to former Civil Code section 4606, changing "parents" to "parties," we assume that, as with the earlier amendment, it intended "parties" to include nonspouses, i.e., parties who are not the parents of the child. (Cf. *People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380] [when in a similar manner the Legislature uses a word which has been construed judicially, we can presume the word was intended in the sense placed on it by the courts]; *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 359 [185 Cal.Rptr. 453, 650 P.2d 328] [words with accepted judicial interpretation should be given the same meaning when used by the Legislature in statutes dealing with the same subject matter].)

The purpose of the amendment to former Civil Code section 4606 is readily apparent. If the services of court-appointed counsel for the child are required to address issues raised by a nonparent party in the action, common sense dictates the nonparent party should be responsible for some or all of the cost of counsel's services on behalf of the child. In addition, expanding the pool of resources available to compensate court-appointed counsel for

the child increases the likelihood the trial court will exercise its discretion to appoint such counsel, thereby affording greater protection for the child.[1]

In 1990, the Legislature again amended former Civil Code section 4606 to specify in subdivision (f) that the compensation and expenses of court-appointed counsel for a child shall be paid "by the parties" except as provided in new subdivision (g), which stated: "Upon its own motion or that of a party, the court shall determine whether *both parties together* are financially unable to pay all or a portion of the cost of counsel appointed pursuant to this section, and the proportion of the cost of that counsel which the court finds the parties are unable to pay shall be paid by the county. The Judicial Council shall adopt guidelines to assist in determining financial eligibility for county payment of counsel appointed by the court pursuant to this section." (Stats. 1990, ch. 754, § 1, p. 3418, italics added.)[2]

By reiterating in subdivision (f) of former Civil Code section 4606 that the compensation and expenses of court-appointed counsel for a minor child shall be paid by the "parties" rather than by the "parents," the Legislature appears to have intended, as it did in amending the statute in 1988, that the obligation ordinarily must be borne by all the parties to the action, not just those who are the child's parents.

However, as noted at the outset of this discussion, in adding subdivision (g) to the former statute to provide for public subsidy of the cost of appointed counsel for the child when "both parties together" are unable to pay, the Legislature injected some uncertainty in the legislative scheme.

Grandmother argues the word "both" indicates a legislative intent to retreat to the earlier version of the statute which placed upon parents, but not other parties, responsibility for the cost of counsel appointed to represent the child. We disagree. If the Legislature so intended, it simply could have

---

[1]Grandmother suggests that construing the statute to apply to nonparents is at odds with its purpose since nonparties, like grandmother, who enter legal proceedings to gain custody of a child because they believe parental custody is detrimental to the child may be deterred from doing so "if faced with the possibility that they will have to pay not only their own attorney's fees, but those of counsel appointed for the child as well, . . . with the result that the child will continue to suffer [in the parents' custody]." We are unpersuaded that interested nonparents who desire to protect a child necessarily would decline to enter the action simply because, if they are financially able, they might be required to pay all or a portion of the compensation of counsel appointed to represent the child. Although this is a possibility, the Legislature reasonably may have concluded a more realistic threat to children in marital dissolution actions is that trial courts would be dissuaded from appointing counsel to represent such children if the pool of resources to compensate counsel was limited to those of the children's parents.

[2]This language is identical to that now contained in section 3153, subdivision (b).

replaced the word "parties" with the word "parents." That it did not make such an amendment when it added subdivision (g) to the statute indicates the Legislature did not intend to so limit the pool of resources available to compensate counsel appointed for the child. (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 11 [246 Cal.Rptr. 5, 752 P.2d 443] [we presume the Legislature did not intend to act inconsistently on the same subject].)

To the contrary, the evident purpose of the 1990 amendment was to *expand* the fiscal resources which could be used to compensate court-appointed counsel for the child by compelling the county to cover any portion that the parties together are financially unable to pay. Enlarging the resource pool in this manner promotes four apparent purposes of the legislative scheme: it (1) ensures a source of compensation, private and public, for counsel appointed by the court to represent a child in a marital dissolution action; (2) thereby increases the likelihood the court will appoint such counsel, thus promoting greater protection of the interests of children; (3) as a matter of fairness, requires any party, not just the parents of the child, to share the expense of compensating the child's counsel for services required to address issues raised by the party; and (4) limits the burden on taxpayers by specifying that county funds will be expended only when the pool of private resources is insufficient to compensate court-appointed counsel.

This legislative intent is apparent both in the language of the amendment and in its legislative history. Analyses prepared for the Judiciary Committees of the Senate and Assembly reflect that the 1990 amendment was sponsored by the Judicial Council for the purpose of making *additional* funds available for court-appointed counsel for children in marital dissolution proceedings.[3] Referring to both "parents" and "parties" as having the then-existing responsibility of compensating such counsel if they are able to do so, the bill analyses note that, due to the lack of private resources for such compensation, only a "small number of appointments" were being made in many counties. According to the bill analyses, "a majority of the [family law] judges agreed that county payment of appointed counsel will likely increase the number of appointments and most thought the increase would be significant." The committee bill analyses, as well as the analysis provided to all members during the third reading of the bill before the entire Assembly,

---

[3]We grant Maynard's request, on behalf of John Jr., for judicial notice of a Senate Committee on Judiciary analysis of Assembly Bill No. 2708 in the 1989-90 Regular Session, prepared for a hearing on July 3, 1990, and an Assembly Committee on Judiciary analysis of said bill prepared for a hearing on March 21, 1990 (items 8 & 9 of request). The request for judicial notice is denied in all other respects. On our own motion, we take judicial notice of an analysis dated June 12, 1990, for the "third reading" of the bill before the entire Assembly. We deny grandmother's request for judicial notice. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

further reflect that the legislation was intended to provide for county funding only if the "parties" are financially unable to pay all or a portion of the cost of the child's appointed counsel.

Grandmother's interpretation of the amended statute—i.e., the phrase "both parties" limits the phrase "by the parties" to only two parties, the mother and father of the child—would shrink the pool of resources available to compensate counsel appointed for the child and thus would defeat, rather than promote, the purpose of the statute.

Accordingly, the application of well-established rules of statutory interpretation compels us to reject giving the word "both" a literal meaning limited to the mother and father of the child. Rather, harmonizing the phrase "both parties together" with the phrase "by the parties" in a manner which comports with the intent of the Legislature, we construe the compensation requirement of former Civil Code section 4606, subdivisions (f) and (g), now contained verbatim in section 3153, to apply to all the parties in a marital dissolution action involving issues of child custody and visitation, not just parties who are the parents of the child, and to provide for public funding only if *all* the parties together are financially unable to pay counsel's compensation or a portion thereof.

Grandmother's attack on the trial court's order that she pay a portion of the compensation and expenses of John Jr.'s counsel is based solely on her interpretation of the statute. She does not contend the court erred in finding that $45,025 was a reasonable amount of attorneys fees and costs incurred as a result of grandmother's effort to obtain custody of John Jr. and that she had the ability to pay this amount, nor does she claim the court erred in allocating that portion to her as opposed to father or mother, or in ordering her to pay for future legal services for the child. Finding no merit in grandmother's contention, we shall affirm the order.

## II

■ The trial court also ordered grandmother to pay the attorney fees and costs incurred by father as a result of grandmother's effort to obtain custody of John Jr. from father. The order was made pursuant to section 2030, which provides: "(a) During the pendency of a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court may, upon (1) determining an ability to pay and (2) consideration of the respective incomes and needs of the parties in order to ensure that each party has access to legal representation to preserve all of the party's rights, order any party, except a governmental entity, to pay the amount reasonably

necessary for attorney's fees and for the cost of maintaining or defending the proceeding. From time to time and before entry of judgment, the court may augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding related thereto, including after any appeal has been concluded. [¶] (b) Attorney's fees and costs within this section may be awarded for legal services rendered or costs incurred before or after the commencement of the proceeding. [¶] (c) For services rendered or costs incurred after entry of judgment, the court may award attorney's fees and costs reasonably necessary to maintain or defend any subsequent proceeding, and may augment or modify any award so made, including after an appeal has been concluded. [¶] (d) Any order requiring a party who is not the spouse of another party to the proceeding to pay attorney's fees or costs shall be limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (Stats. 1993, ch. 219, § 106.1.)

As originally enacted in former Civil Code section 4370, the statute allowed the court to order only the "husband or wife, or father or mother, as the case may be," to pay for a reasonable amount of attorney fees and costs incurred by the other in the prosecution or defense of a marital dissolution proceeding. (Stats. 1970, ch. 311, § 1, p. 705.) In 1981, that section was amended to specify the court may order "any party, except a governmental entity," to pay such attorney fees and costs, but that an order requiring "a party who is not the [spouse] of another party to the proceeding" to pay such fees and costs shall be "limited to an amount reasonably necessary to maintain or defend the action on the issues relating to that party." (Stats. 1981, ch. 716, § 1, p. 2816.) The same language is now contained in section 2030, subdivisions (a) and (d).

According to grandmother, the "impetus for the 1981 amendment broadening the family law court's authority to order attorney's fees beyond parents with a duty to support each other and their children was . . . to ensure that third parties brought into dissolution proceedings because they may hold the property of one of the spouses could be ordered to pay a fair share of attorney's fees generated [by] litigation of the issues related to them." Based on this premise, she argues the section should not be extended to "those who, like grandmother, enter proceedings to defend the children from harm rather than to defend property interests." We disagree.

The purpose of section 2030 is to ensure that the overall cost of litigating a proceeding for the dissolution of marriage, nullity of marriage, or legal separation (§ 2030, subd. (a)) is apportioned equitably depending on what is "just and reasonable under the relative circumstances of the respective

parties." (§ 2032, subds. (a) & (b); see *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [209 Cal.Rptr. 354, 691 P.2d 1020]; *In re Marriage of Popenhager* (1979) 99 Cal.App.3d 514, 525 [160 Cal.Rptr. 379].)[4]

Contrary to grandmother's claim, the language of section 2030 is not reasonably susceptible to a distinction between nonspouse parties who enter the action to "defend their property interests" and nonspouses who enter the action to "defend the rights of children." (Cf. *In re Marriage of Jovel* (1996) 49 Cal.App.4th 575, 582-587 [56 Cal.Rptr.2d 740] [business entities joined due to interest in property ordered to pay attorney fees of husband pursuant to § 2030]; *Paduano* v. *Paduano* (1989) 215 Cal.App.3d 346, 350-352 [263 Cal.Rptr. 589] [aunt seeking custody of child ordered to pay attorney fees of child's mother pursuant to former Civ. Code, § 4370]; *In re Marriage of Siller*, *supra*, 187 Cal.App.3d at pp. 41-42, 44 [business entities joined due to interest in community property ordered to pay attorney fees of wife pursuant to former Civ. Code, § 4370].)

Rather, subdivision (a) of section 2030 specifically states the statute is intended "to ensure that each party has access to legal representation to preserve *all* of the party's rights" and applies broadly in authorizing the court to order "*any* party, except a governmental entity" to pay a reasonable amount of attorney fees and costs incurred by another party. (Italics added; cf. *Fierro* v. *State Bd. of Control* (1987) 191 Cal.App.3d 735, 741 [236 Cal.Rptr. 516] ["The word 'any' has consistently been interpreted as broad, general and all embracing."].)

Grandmother's challenge to the trial court's order that she pay a portion of father's attorney fees and costs is based solely on her interpretation of the statute. She does not contend the court erred in finding that $69,950.87 was an amount reasonably necessary for attorney fees and costs incurred by father in defending against grandmother's effort to obtain custody of John Jr., nor does she claim the court erred in considering the respective incomes and needs of the parties and in determining she had the ability to pay this amount and father had the need for it to preserve his rights. Finding no merit in grandmother's contention, we shall affirm the order.

---

[4]In determining whether an award of attorney fees and costs is just and reasonable, the court must consider "the need for the award to enable each party, to the extent practical, to have sufficient resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties . . . . The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b); Stats. 1993, ch. 219, § 106.1.)

## III

■ Relying on section 3103, subdivision (g), the court ordered grandmother to pay "all accrued costs of counseling" which had been provided by John Jr.'s therapist, as well as the future cost of counseling as recommended by the therapist or until further order of the court.

Grandmother correctly contends the trial court erred in requiring her to pay the cost of her grandchild's counseling.

A grandparent generally has no legal duty to support a grandchild. (§ 3930 ["A parent does not have the duty to support a child of the parent's child."]; cf. § 3951, subd. (a) ["A parent is not bound to compensate the other parent, or a relative, for the voluntary support of the parent's child, without an agreement for compensation."].)

Section 3103, subdivision (g) makes a limited exception to this rule by providing in pertinent part: "When a court orders grandparental visitation [with a child of a party to a marital dissolution proceeding, based upon a determination that such visitation is in the best interest of the child (§ 3103, subd. (a))], the court in its discretion may, based upon the relevant circumstances of the case: [¶] . . . [¶] (2) Notwithstanding Sections 3930 and 3951, order a parent or grandparent to pay to the other, an amount for the support of the child or grandchild. For purposes of this paragraph, 'support' means costs related to visitation such as any of the following: [¶] (A) Transportation. [¶] (B) Provision of basic expenses for the child or grandchild, such as medical expenses, day care costs, and other necessities." (Stats. 1993, ch. 832, § 1.)

As section 3103, subdivision (g) defines "costs related to visitation" in illustrative terms only, it must be construed to cover expenses other than, but similar to, those specifically identified in the section. (Cf. *Valladares* v. *Stone* (1990) 218 Cal.App.3d 362, 369 [267 Cal.Rptr. 57].) However, by specifying a court may "order a parent or grandparent *to pay to the other*" (italics added) "costs related to visitation," and by providing the examples contained in the statute, the Legislature has expressed an intent that the costs must be incurred either to facilitate the visitation or during the visitation, and that the burden to pay these costs may be allocated based on the respective financial abilities and needs of the parent and grandparent.

For example, visitation requires transportation either of the grandchild to the grandparent or vice versa. The statute obviously authorizes the court to order the parent or grandparent to provide this transportation or to reimburse

the other person for the cost of transportation provided by the other person. Visitation ordinarily requires the expenditure of money for the grandchild's basic necessities, such as food. Depending again on respective financial abilities and needs, the statute authorizes the court to allocate all or a portion of such expenses to either the parent or grandparent. The same principle applies to medical expenses incurred during visitation (e.g., if the grandchild is injured while playing during visitation with a grandparent, all or a portion of the cost of medical expenses can be allocated to either the parent or grandparent) or day-care costs necessarily incurred as a result of the visitation when the parent and grandparent work.

Such is the case with any other "basic expenses" and "necessities" (§ 3103, subd. (g)(2)(B)) which are related to visitation between a grandparent and grandchild by either facilitating the visitation or occurring during the visitation. Applying the common meaning to these terms, "basic expenses" and "necessities" mean costs which are an essential, i.e., indispensable, condition of the visitation. (Oxford English Dict., *supra*, p. 689; Webster's New Internat. Dict., *supra*, pp. 181, 777.)

We can envision circumstances in which counseling may be a cost related to visitation akin to "medical expenses" and other "necessities." (§ 3103, subd. (g)(2)(B).) The following scenario is an example. Assume that throughout a young child's life, a parent has wrongly prejudiced the child against a grandparent and has refused to allow the child to see or talk with the grandparent, and that a family law court then determines it is in the best interest of the child to have contact with the grandparent and orders visitation even though it initially may traumatize the young child. In this circumstance, counseling for the child might be necessary to help overcome the trauma and to engender a nurturing relationship between grandparent and grandchild. In other words, counseling might be essential to facilitate the visitation. If so, it would be a cost "related to visitation," pursuant to section 3103, subdivision (g)(2), which could be allocated to the grandparent or parent depending on their respective needs and financial abilities to pay that cost. We also can envision circumstances in which counseling for a grandchild may become a necessity as a result of a traumatic event which occurs during visitation. If so, it would be a cost related to visitation within the meaning of section 3103, subdivision (g)(2).

Father argues the counseling provided to John Jr. in this case is a cost related to visitation with grandmother because the child's emotional problems are attributable in part to grandmother's efforts to continue and expand her contact with the child. However, father points to no evidence which supports his assertion that there is a causal relationship between the child's

*visitation with grandmother* and his emotional distress. Although the court found grandmother is both an "important ingredient in" her grandchild's life and a "contributing factor to his emotional problems," the court was referring to the "emotional damage suffered by this child at the hands of the three parties," due in part to the prolonged and bitter dispute among father, mother and grandmother over custody.

Because there is no substantial evidence in the record to support a conclusion that counseling for the child was essential to facilitate visitation with grandmother or to address problems arising during such visitation, the cost of such counseling is not "related to visitation" within the meaning of section 3103, subdivision (g)(2). Consequently, the trial court erred in ordering grandmother to pay "all accrued costs of counseling" which had been provided by John Jr.'s therapist, as well as the future cost of counseling as recommended by the therapist or until further order of the court.

### IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The order requiring grandmother to pay for the costs of her grandchild's counseling is reversed. In all other respects, the orders from which grandmother appeals are affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)

Davis, Acting P. J., and Morrison, J., concurred.

---

*See footnote, *ante*, page 295.