Filed 6/17/19; Certified for publication 7/8/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CHRISTINE SUH et al., <br><br> Defendants and Appellants. | B280293 <br><br> (Los Angeles County Super. Ct. No. BC541476) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Glenn A. Williams for Defendants and Appellants.

Knox Ricksen, Thomas E. Fraysse and Maisie C. Sokolove for Plaintiffs and Respondents.

————————————————————————

# INTRODUCTION

Allstate Insurance Company and several related companies (collectively, Allstate) brought this action under Insurance Code section 1871.7 (section 1871.7) on behalf of the People of the State of California against Christine Suh, Christina Chang (Suh's mother), and others for insurance fraud in violation of Penal Code section 550 (section 550), which makes it unlawful to submit false or fraudulent claims to an insurance company. Allstate alleged Suh set up sham law firms, then with Chang's help procured automobile insurance policyholders of Allstate as clients of the sham law firms, submitted insurance claims on behalf of the insureds, and absconded with settlement proceeds. The jurors found in favor of Allstate and imposed over $6 million in civil penalties.

Suh appeals from the ensuing judgment, arguing the trial court should have stayed this action pending the resolution of a criminal investigation of her conduct. Suh, joined by Chang, also argues that the insurance claims they submitted to Allstate were not fraudulent because, although the insureds were not actually represented by attorneys, the information in the claims forms was accurate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Suh and Chang Commit Insurance Fraud, and Allstate Files This Action*

Suh was not an attorney and was not otherwise authorized to represent Allstate's insureds. She overcame that obstacle by creating and, with help from Chang and others, operating eight

2

sham law offices.  Suh paid several individual attorneys a monthly fee of $3,000 to use their names and state bar numbers. Suh and Chang procured Allstate's insureds as "clients," filed 318 insurance claims on their behalf (not authorized by and without the knowledge of the individual attorneys), and diverted insurance proceeds to their personal use.  Allstate would not have released funds to the law firms had it known they were fake. Allstate's in-house investigator testified it was illegal to "deal with third parties who are not lawyers purporting to represent [insureds]."  Allstate's insurance fraud expert similarly testified insurance companies "do not pay" claims "that are presented by sham law firms."

Allstate discovered Suh's fraudulent scheme and filed this action.  Allstate alleged, not that the insurance claims contained false or fraudulent statements about the insureds, but that obtaining insurance proceeds by posing as law firms was insurance fraud in violation of applicable provisions of the Penal and Insurance Codes.  Allstate sought civil penalties and assessments and an injunction under the unfair competition law.

B.    *The Trial Court Denies Suh's Ex Parte Application To Stay This Action*

Two weeks before the scheduled trial date, and four months before the trial actually commenced, Suh filed an ex parte application to stay this action indefinitely.  Counsel for Suh had recently learned the district attorney was investigating Suh's participation in the insurance fraud scheme.  Citing her Fifth Amendment privilege against self-incrimination, Suh argued: "Clearly, any discovery sought by plaintiffs in this matter, or testimony offered by [Suh] in her defense at trial, would

3

necessarily require [Suh] to answer questions related to the very documents and events that would form the basis of a criminal prosecution for insurance fraud." During a brief hearing on the application, counsel for Allstate observed that Suh was "one of two ringleaders in this case" and "a central witness" and that, if the court were to issue a stay, the stay should apply only to discovery. The trial court denied the ex parte application.

### C. *The Jury Finds for Allstate*

The jury found that Suh committed one or more violations of section 550 in connection with 313 insurance claims and imposed $2.3 million in civil penalties and $2.8 million in assessments against her. The jurors found Chang committed one or more violations of section 550 in connection with 241 insurance claims and imposed $1.2 million in civil penalties against her. The trial court enjoined Suh and Chang from engaging in insurance-related activities and awarded Allstate its attorneys' fees and costs.

## DISCUSSION

### A. *The Trial Court Did Not Abuse Its Discretion in Denying Suh's Ex Parte Application for a Stay*

Suh argues the trial court erred in denying her ex parte application to stay this action until "the risk of criminal prosecution [was] eliminated." She argues the trial court's ruling "forced [her] to have to choose between asserting her Fifth Amendment privilege and risking substantial monetary jeopardy in the civil action on one hand, and waiving her Fifth Amendment privilege and subjecting herself to criminal jeopardy

4

on the other hand." She asserts that "this case should be remanded back to the trial court and stayed for a retrial pending completion of the criminal matter." We review a trial court's ruling on a request for a stay for abuse of discretion. (*People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 951; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 480.)

Suh made her request for a stay, not in a regularly noticed motion, but in an ex parte application. A court will not grant ex parte relief "in any but the plainest and most certain of cases." (*Consolidated Const. Co. v. Pacific E. Ry. Co.* (1920) 184 Cal. 244, 246; see 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 58 ["[a]n ex parte application for relief, being an exception to the general requirement of notice to other parties . . . , is permitted only in limited circumstances"].) For this reason, the rules governing ex parte applications in civil cases require that "[a]n applicant . . . make an affirmative factual showing . . . of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Cal. Rules of Court, rule 3.1202(c); see *Webb v. Webb* (2017) 12 Cal.App.5th 876, 879.) A trial court should deny an ex parte application absent the requisite showing. (See *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 523, 551, fn. 30 [counsel obtained an ex parte order "without apparent justification" where the application "set forth no basis for a finding of good cause to dispense with proceeding by noticed motion"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 9:346 ["don't ask a judge for an ex parte order unless it is *clear* that such relief is proper"].) We review a trial court's ruling on an ex parte application for abuse of discretion. (See

5

*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152
Cal.App.4th 1043, 1060-1061.)

The trial court here acted well within its discretion in
denying Suh's application. Suh did not make a showing of
irreparable harm, immediate danger, or any other basis for
ex parte relief. (See *Denton v. City and County of San Francisco*
(2017) 16 Cal.App.5th 779, 793 [trial court erred in granting "an
ex parte application unsupported by evidence of irreparable
harm"]; *Datig v. Dove Books, Inc.* (1999) 73 Cal.App.4th 964, 977
[trial court erred in granting an ex parte application where
"defense counsel failed to make an affirmative factual
showing . . . of the irreparable harm, immediate danger, or any
other statutory basis upon which he sought ex parte relief"]; cf.
*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337 [trial court
abused its discretion in denying an ex parte application for a
temporary protective order where the applicant presented
evidence of "a substantial risk that 'great or irreparable injury'
would result to [the applicant] before the matter [could] be heard
on notice"].) Suh did not argue that, without a stay, there would
be any risk of self-incrimination within the 16 court days before
the court could hear a motion on regular notice. (See Code Civ.
Proc., § 1005, subd. (b).) She did file her application 13 days
before a tentative trial date, but the record reflects that the court
and the parties anticipated the trial would be continued. Suh did
not argue in the trial court, and does not argue on appeal, that
she expected the trial to begin before the court could hear her
motion on regular notice or before some pretrial or court
proceeding that might require her to testify or otherwise
incriminate herself. In fact, even though the trial subsequently
was continued and did not begin until four months after Suh's ex

6

parte application, Suh never filed a motion to stay, and she does not point to anything in the record indicating she ever raised the issue again.

Suh argues "the logical solution would have been the one suggested in *Pacers*[*, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686 (*Pacers*)]: 'An order staying discovery until expiration of the criminal statute of limitations [to] allow [the plaintiffs] to prepare their lawsuit while alleviating [the defendants'] difficult choice between defending either the civil or criminal case.'" *Pacers* is distinguishable. The defendants in *Pacers* filed a noticed motion, not an ex parte application. (*Id.* at p. 688.) Moreover, the defendants in *Pacers* presented evidence there was a real possibility the prosecuting agency would file criminal charges: The United States Attorney had unsuccessfully sought a grand jury indictment but was maintaining an "'open file'" on assault and battery charges against the defendants. (*Id.* at p. 687.) Here, although there was some evidence of a criminal investigation at some point, there was no evidence that it was ongoing. In addition, unlike Suh, the defendants in *Pacers* did not seek to stay the entire action indefinitely. They sought to postpone their depositions to a date after the criminal statute of limitations had run. (*Id.* at p. 688.) Finally, the *Pacers* court held the trial court should have weighed "the parties' competing interests with a view toward accommodating the interests of both parties, if possible." (*Id.* at p. 690.) Had Suh filed a noticed motion, the trial court would have had an opportunity to weigh the parties' interests and make an informed decision on "the particular circumstances and competing interests involved." (*People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at p. 952; see *Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 483; *Fuller v.*

7

*Superior Court* (2001) 87 Cal.App.4th 299, 306.)  By not filing a noticed motion for a stay, Suh failed to give the trial court an opportunity to conduct the analysis the court in *Pacers* was able to conduct.

>B.      *Suh and Chang Committed Insurance Fraud in Violation of Section 550*

"The business of insurance involves many transactions that have the potential for abuse and illegal activities," and "[a]utomobile insurance fraud is the biggest and fastest growing segment of insurance fraud . . . ."  (Ins. Code, § 1871, subds. (a), (b).)  The Insurance Frauds Prevention Act (Ins. Code, § 1871 et seq.) addresses this problem by creating civil liability for violating several insurance fraud provisions of the Penal Code, including section 550.  Section 1871.7, subdivision (b), provides: "Every person who violates any provision of . . . Section . . . 550 . . . of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation . . . .  The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation."

Allstate brought this action under section 1871.1, subdivision (e)(1), which authorizes insurers to bring fraud actions under the Act.  (See *People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 546.)  After a six-day trial, the jury imposed civil penalties on Suh and Chang for violating section 550, subdivisions (a)(1), (b)(1), (b)(2), and (b)(3).  Section 550, subdivision (a)(1), provides "[i]t is unlawful . . . to aid, abet,

8

solicit, or conspire with any person" to "[k]nowingly present or cause to be presented any false or fraudulent [insurance] claim . . . ." Section 550, subdivision (b), makes it unlawful, in connection with an insurance claim, to "knowingly assist or conspire with any person to do, any of the following:  [¶]  (1) Present or cause to be presented any written or oral statement . . . knowing that the statement contains any false or misleading information concerning any material fact.  [¶]  (2) Prepare or make any written or oral statement . . . knowing that the statement contains any false or misleading information concerning any material fact.  [¶]  (3) Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment . . . ."

Suh and Chang argue Allstate's theory that the insurance claims they submitted "were false or fraudulent was based solely on the testimony that the claims submitted to it were submitted by a [*sic*] 'sham law firms.'  No evidence was presented that the claims were 'false or fraudulent' in any other regard.  There was no allegation of staged accidents, nor any claim that injuries were inflated or that treatment was not provided."  According to Suh and Chang, because Allstate did not submit evidence the insurance claims contained false or fraudulent statements, Suh and Chang did not violate section 550 or submit "fraudulent claims" within the meaning of section 1871.7, subdivision (b).

Suh and Chang read the insurance fraud statutes too narrowly.  Unlawful conduct under section 550 does not require a misstatement of fact in the insurance claim.  Section 550 requires only that a person knowingly (1) present a claim that is false or fraudulent in some respect, (2) present, prepare, or make a

9

statement containing false or misleading information about a material fact, or (3) conceal an event that affects a person's right or entitlement to insurance benefits.  An insurance claim is fraudulent under section 550 and section 1871.7, subdivision (b), when it is "characterized in any way by deceit."  (*State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579, 601.) "California law uses the words 'fraud' and 'deceit' interchangeably," and a "claim is 'fraudulent' [within the meaning of section 1871.7, subdivision (b)] if it is characterized by deceit, dishonesty, or trickery, perpetrated to gain some unfair or dishonest advantage.  [Citation.]  This broad definition . . . is consistent . . . with [section 1871.1,] subdivision (b)'s incorporation of the violations in . . . section 550, which encompass deceits shown by 'false or fraudulent' claims [citation], and statements that are 'false or misleading.'"  (*Wilson*, at p. 600.)

Suh and Chang perpetrated a deceitful insurance scheme designed to acquire insurance proceeds illegally for personal gain. Suh and Chang deceived Allstate into believing the attorneys whose names they were using actually and lawfully represented its insureds.  (See Cal. Code Regs., tit. 10, § 2695.2(c) [only attorneys, family members, adjusters, or other persons authorized by law may represent insureds].)  In their communications with Allstate, Suh and Chang misrepresented that attorneys represented the insureds.  They concealed the fact they were masquerading as attorneys when they filed the insurance claims.  And the misrepresentations were material: Allstate would not have released settlement proceeds to Suh or Chang or their sham law firms had Allstate known the truth.

10

The conduct of Suh and Chang constituted insurance fraud under section 550 and section 1871.7.[1]

## DISPOSITION

The judgment is affirmed. Allstate is to recover its costs on appeal.


SEGAL, J.


We concur:


ZELON, Acting P. J.          FEUER, J.

---

[1] Allstate also alleged Suh violated section 1871.7, subdivision (a), which makes it unlawful "to knowingly employ runners, cappers, steerers, or other persons . . . to procure clients . . . to . . . obtain services or benefits under a contract of insurance . . . ." Because the jury found Suh committed multiple violations of section 550 to support the imposition of the penalties and assessments, we do not reach the issue whether she also violated section 1871.7, subdivision (a). Suh does not argue the jury found her liable for capping (§ 1871.7, subd. (a)) and not insurance fraud (§ 550) regarding any of the 313 fraudulent insurance claims.

11

Filed 7/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE ex rel. ALLSTATE INSURANCE COMPANY et al., | B280293 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC541476) |
| v. | |
| CHRISTINE SUH et al., | **ORDER CERTIFYING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT)** |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed June 17, 2019 was not certified for publication.  Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the non-parties' requests for publication under California Rules of Court, rule 8.1120(a), are granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of the opinion be deleted and the opinion be published in the Official Reports.

_____

ZELON, Acting P.J.             SEGAL, J.             FEUER, J.