Filed 4/11/23 Marriage of Critzer CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of MARGARET and DAVID E. CRITZER. | H049072, H049187 (Santa Clara County Super. Ct. No. 2013-6-FL011468) |
| MARGARET L. CRITZER, Respondent, v. DAVID E. CRITZER, Appellant. | |

These are the fifth and sixth appeals arising out of the dissolution of appellant David E. Critzer's marriage to respondent Margaret L. Critzer. David now appeals multiple postjudgment orders mandating the sale of the marital house and levying sanctions against him. Because the house was sold in February 2021, we determine that the appeal of the order mandating its sale is moot. We also determine that the trial court did not abuse its discretion in issuing the sanctions and we therefore affirm those orders.

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. *Status-only judgment of dissolution – February 2015*

David and Margaret married in 1986. In November 2013, Margaret petitioned for dissolution of marriage. In September 2014, she requested that the court bifurcate the issue of the dissolution of the status of marriage.[2] To facilitate resolution of various issues—including property division, support, and reimbursement claims—the parties stipulated to a separation date of October 11, 2014. A status-only judgment of dissolution was then entered on February 3, 2015. In case No. H042214, this court affirmed that judgment, as modified.

## B. *Judgment on reserved issues – January 2018*

The reserved issues were set for trial in May 2017. However, the parties reached a judicially supervised settlement of some of the issues, including property division, reimbursement claims, spousal support for David, and attorney fees. Specific other issues remained for resolution, including the possible sale of the marital house.

On January 12, 2018, following Margaret's motion to enforce the settlement pursuant to Code of Civil Procedure section 664.6, the trial court entered a judgment on reserved issues, which included division of property between the parties. Pursuant to that judgment, David and Margaret would each receive a one-half interest in the net sale proceeds of the marital house on Marigold Court in Mountain View (Marigold).

---

[1] We draw the facts recited here in part from our opinions in David's prior appeals, C*ritzer v. Critzer* (Dec. 21, 2018, H042214 [nonpub. opn.]) (case No. H042214); C*ritzer v. Critzer* (Dec. 26, 2019, H045527 [nonpub. opn.]) (case No. H045527); and *Critzer v. Critzer* (Mar. 11, 2022, H047809 [nonpub. opn.]) (case No. H047809), where they are set forth more fully. On our own motion, we take judicial notice of our prior opinions. (Evid. Code, §§ 452, subd. (d), 459.)

[2] Family Code section 2337, subdivision (a), provides that "[i]n a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues."

2

Among other things, the judgment on reserved issues provided: "The parties have agreed that Marigold shall be sold and the net sale proceeds after costs of sale will be divided equally. [¶] The parties will have to sort out [the] details regarding exactly when and how Marigold will be sold. If there is a dispute, the court shall reserve jurisdiction to resolve those disputes if the parties and counsel cannot agree at a future date." It further provided that David would continue to "occupy[]" Marigold pending its sale.

David appealed the judgment on reserved issues in case No. H045527. This court rejected his arguments that the family court erred in entering the judgment while there remained unresolved issues over material terms such as postseparation expenses and spousal support. After the remittitur issued on February 24, 2020, Margaret filed a request for an order of appellate attorney fees as sanctions on April 2, 2020, in which she sought $87,560. The hearing on that request was held on August 20, 2020, after which the trial court awarded $55,000 to Margaret.[3]

### C. Order mandating sale of Marigold – October 2020

In July 2020, Margaret filed a request for an order enforcing the judgment on reserved issues. According to her, David had refused to cooperate in the division of certain assets, including listing and selling the Marigold house. She claimed he was using the Covid pandemic "to indefinitely prolong his time at Marigold, denying me my use of the sale proceeds causing me economic detriment." Margaret's attorney had e-mailed David on February 24, 2020, stating that "Margaret wants to immediately take steps to have the Marigold house listed and sold. We think a listing on April 7, 2020 would be appropriate." After some initial participation and progress preparing the property for listing, David stated via e-mail on April 19, 2020, that the Covid shelter-in-place orders prevented them from selling the house.

---

[3] Additional facts relevant to this award of fees are included below in the section discussing David's appeal of the award.

3

The parties exchanged additional e-mails regarding the sale of Marigold over the next two weeks. Margaret's attorney reiterated that Margaret "WANTS IT SOLD, NOW" and "is not willing to wait for some indeterminate [amount] of time until you decide you're ready to move. That will never happen. Again, the Judgment is clear. Marigold is to be sold. Nothing in the Judgment permits you to delay the sale of the property . . . for any reason, lockdown or not, quarantine or not, market downturn or not. Period."

According to Margaret, David's "track record" and statements in his e-mails "make it clear that he has no intention of listing Marigold." She added that, "[u]nfortunately, despite the court's clear orders in the Judgment requiring Marigold to be sold, the state's [shelter-in-place] [o]rders have temporarily denied me a remedy and essentially permitted David to seize control of my life and my finances."

Margaret requested that the court order Marigold to be "immediately listed and sold"; Grant Walters to be appointed as the listing agent and David to be required to sign the listing agreement within 48 hours, or to allow the court clerk to sign in his stead; the house to be listed for $3 million, or at a price recommended by Walters; David to vacate Marigold within 30 days of entry of the order; and attorney fees as sanctions.

David opposed the request for an order to sell Marigold. He argued that there were "unresolved issues regarding the terms of spousal support and the payment of housing-related expenses with community property," which left "major portions of the settlement unknown." He claimed the court must resolve those issues before proceeding further with property division or considering Margaret's motion for the sale of the house.

The court heard the matter on October 1, 2020. It granted the request and ordered that "the home shall be listed for sale. [Margaret's] selling agent will be the listing agent. [¶] [David] will remain in the house and is to cooperate with selling the home." The court also granted Margaret's request for sanctions for $8,500.

4

***D. Marigold listing and purchase agreement – October 2020-January 2021***

David then signed the listing agreement on October 12, 2020. On November 13, 2020, the house was ready to be listed. However, David did not respond to requests from Walters to provide approval to list it, so it was not listed that day. On November 14, 2020, Margaret e-mailed David, stating that if, by that afternoon, he had not selected a date to list the house, she would file an ex parte application the next court day to obtain an order for the house to be listed.

On November 18, 2020, David agreed to list Marigold, and the house was listed for sale at $3.35 million. By November 23, 2020, Walters had received two offers over the listing price. After initially stating that he would accept the higher offer for $3.5 million, David refused to accept it as scheduled on November 23, 2020. Margaret's attorney e-mailed David that day, stating that there was "no excuse" for his refusing to accept a $3.5 million offer "with no contingencies and 30 day free rent back" to David. She added that, if he did not accept the offer, Margaret would file an ex parte application asking the court to enforce the order and force the sale.

The next day, David agreed to accept the offer and the parties signed the purchase agreement for $3.525 million. The purchase agreement provided that escrow would close on January 8, 2021. Shortly before that date, the buyer requested an extension to January 21, 2021, due to delay by the lender in conducting a second appraisal of the house, following the unexpected death of the previous appraiser in December 2020. Margaret agreed to the extension, but David did not. On January 6, 2021, he e-mailed Margaret and her attorney, stating, "I don't have the ability to get a mortgage for a new residence and the sale needs to be terminated now." According to David, "I hesitated to agree to such an extension because I was now aware of the problem of obtaining a mortgage for a residence purchase and knew that I had been placed in a bad spot to obtain a new residence and transition my business smoothly to that residence."

Instead of agreeing to the extension, David requested that Walters issue a "Demand to Close Escrow," or advise him if it could not be done. David stated, "I want escrow closed by January 8th as scheduled and will hold firm to that unless I receive information that conflicts with what I have received so far, which is that I will not be able to obtain a mortgage from any major lender to purchase a new residence with a pending divorce proceeding ongoing."

Margaret did not agree to sign a Demand to Close Escrow. She told David, "[y]ou are not the sole owner of the house, and you have told the judge on record that you would cooperate with the selling of the house. A demand to close is NOT cooperating with selling the house. You either sign the extension or I will ask [my attorney] to submit paperwork for the court to sign on your behalf."

Walters stated that he would not proceed with the Demand to Close without Margaret's approval. Because he had inconsistent instructions, Walters was not comfortable taking action at that time.

Later that day, David sent a letter to Walters purporting to terminate him as his real estate agent. David also e-mailed the buyer's agent, informing her that he had terminated Walters, did not agree to an extension, and demanded that they close escrow.

Margaret's attorney responded to David, stating that "[t]he Demand to Close you sent the Buyer was without legal force or effect because Margaret did not join you in the demand. Your alleged termination of Mr. Walters' service is likewise without legal force or effect because Margaret did not join it and there is a court order designating Mr. Walters as Marigold's listing agent." She added that if David did not sign the documents to complete the sale, Margaret would file an ex parte application with the court for an order to have the clerk sign all necessary documents on his behalf. On January 10, 2021, Margaret e-mailed David again, asking him if he will sign the papers to close the sale that week; if not, she would file the ex parte application.

6

On January 22, 2021, Walters e-mailed Margaret and David to inform them that the second appraisal had been completed and the buyer was ready to close the sale on January 29, 2021. David responded by saying that he would not sign the closing papers because he considered the purchase contract void, as the buyer had not performed under the Demand to Close Escrow he had sent them prior to the closing date, and because he had not agreed to the buyer's requested extension of time to close. He stated that the buyer had not performed under the original purchase agreement, or even under the proposed extension of time, and had not circulated an additional extension request. According to David, "[a]t this point, the terms of the purchase contract have not been timely fulfilled."

### E. Order requiring David to close escrow – January-February 2021

Margaret then submitted an ex parte application on January 25, 2021, summarizing the events described above, and seeking an order requiring David to sign the escrow closing documents or to have the court clerk sign in his stead. She also requested that the court order David to vacate Marigold after the 30-day rent back period that had been included in the purchase agreement, and that it levy sanctions.

Margaret cited "exigent circumstances" which she claimed justified the need for ex parte relief. She explained that "David has refused throughout these proceedings to cooperate with and facilitate Marigold's sale, he has engaged in numerous actions intended to sabotage Marigold's sale and discourage and scare away a Buyer who is willing to pay $3,525,000, $175,000 more than our asking price of $3,350,000." Because the buyer wanted to close the sale on January 29, 2021, and David was refusing to execute the closing documents, "once again jeopardizing Marigold's sale," Margaret feared the buyer would walk away if the court did not step in on an urgent basis to complete the sale.

David opposed the application and asked the court instead to declare the purchase agreement void and "suspend the home sale until the proceeding is completed and

7

[David] is not in medical debt collection so that [he] can qualify for a mortgage to purchase a replacement residence." He stated in a declaration that he had worked diligently with Walters to prepare Marigold for sale during October and November 2020; had begun searching for a new home to purchase after Marigold went into contract, but was unable to obtain a mortgage; and had refused to agree to the buyer's requested extension because of the difficulties in obtaining a mortgage and new residence and smoothly transitioning his in-home business.

David also filed a memorandum of points and authorities in opposition to Margaret's ex parte application on January 29, 2021. He argued that in addition to denying Margaret's request, the court should suspend its October 1, 2020 order for sale of Marigold "until this proceeding is concluded and he is able to obtain financing to purchase a new residence following the sale of Marigold since his inability now to obtain a mortgage to purchase a new residence will severely disrupt his small business as an insurance agent and creates an undue hardship on [him]."

The trial court granted Margaret's application on February 1, 2021. The court's "temporary (ex parte) emergency orders" included the following: "[David] shall accept the Purchase Contract signed by [Buyer] and sign the Escrow Closing Documents attached to [Margaret's] Request for Order as Exhibit B, including an Addendum allowing an extension to close the escrow to January 29, 2021. [¶] . . . If [David] fails to sign the Escrow Closing Documents, the Clerk of the Superior Court shall be authorized to sign the Escrow Closing Documents in his place. [¶] . . . [David] shall make the Marigold Property available for a final 'walk-through' by the Buyer prior to escrow closing. [¶] . . . [David] shall vacate Marigold after the expiration of a thirty-day rent back period per the terms of the Purchase Contract and Escrow Closing Documents." The court also set a hearing for February 16, 2021, for "enforcement of order re sale of family residence; court to sign escrow closing papers; sanctions."

8

On February 1, 2021, Margaret's attorney informed David that the court had entered the temporary emergency orders earlier that day and she asked whether he would comply and sign the escrow documents. David did not agree to sign and instead offered to buy out Margaret's half of Marigold. He objected to the ex parte application and insisted that they wait until the hearing set for February 16.

On February 2, 2021, David also filed a notice of appeal, in which he purported to appeal the February 1, 2021 temporary emergency orders, as well as the earlier sanctions orders from October 1 and August 20, 2020 (H049187). He explained to Margaret and her attorney that his appeal was an additional reason he would not be signing the escrow documents, despite the trial court's order.

On February 4, 2021, Margaret and her attorney took the escrow closing documents to the superior court, where the clerk signed them in David's stead. The escrow closed and the deed subsequently recorded on February 11, 2021.

Meanwhile, on February 9, 2021, David had filed an ex parte application for an order staying the court's February 1, 2021 temporary emergency orders, or fixing an undertaking pursuant to Code of Civil Procedure section 917.4 to stay the matter pending his appeal. The next day, Margaret filed an opposition and the court denied David's ex parte request, setting the matter for hearing on March 16, 2021.

The hearing on what remained of Margaret's February 1, 2021 ex parte application was held on February 16, 2021. Margaret's attorney represented to the trial court that escrow had closed and the deed had recorded. She requested that the court renew the temporary emergency order requiring David to vacate Marigold within 30 days of closing, explaining that Margaret was concerned he would not vacate, absent a renewed order. The court declined to issue a new order because the purchase agreement itself required David to vacate the house 30 days after closing. The court asked David, "[t]here's not going to be any issue with that; right?" to which David replied, "Right." Margaret's request for sanctions was continued to be heard at the March 16 hearing.

9

### F. Order requiring David to vacate Marigold – March 2021

On March 10, 2021, David e-mailed the buyer's agent, informing her for the first time that he would not be vacating the house by the 30th day, March 13. After receiving a copy of the e-mail from the buyer's agent, Margaret's attorney informed David that she would be filing an ex parte application that day for an order requiring David to vacate the house within 72 hours, or alternatively for an order shortening time for the matter to be heard at the scheduled March 16 hearing, and for sanctions.

Margaret submitted the ex parte application on March 11, 2021. She claimed David had "again failed to comply with existing orders and arrangements and now refuses to move out of the Marigold property even after telling the court he would voluntarily move out." According to Margaret, "[i]f this goes unchecked, [David] will (if he hasn't already) subject me to immeasurable liability if Buyer sues [David] and me for breach of contract." She asked the trial court to order David to vacate Marigold within 72 hours, or alternatively for an order shortening time for the matter to be heard at the scheduled March 16 hearing, and for sanctions.

At the March 16, 2021 hearing, the trial court ordered David to vacate Marigold within 72 hours, "including all your personal items, all your furniture and any personal effects." The court stated to David, "You looked me in the eye, and you told me you were going to be out of that house so it wouldn't interfere with the contract. And it seems like you're doing everything you can do to sabotage moving forward with your life and dividing the property fair and equitably under the Family Code." The court also ordered that David pay $19,000 in sanctions in connection with Margaret's February 1, 2021 request for orders and sanctions, and set a subsequent hearing for March 30 for Margaret's request for sanctions in connection with her March 11, 2021 request.

At that hearing on March 30, 2021, David confirmed that he had moved out of the house. The trial court then awarded further sanctions for $2,400.

David filed his second notice of appeal on April 19, 2021, in which he purported to appeal: (1) the February 16, 2021 final ex parte order for home sale and final order certifying a settled statement; (2) the March 4, 2021 order for division of home sale proceeds; (3) the March 16, 2021 orders for him to vacate the residence, for Family Code section 271 sanctions, and for execution of a transfer deed to the couple's "Cupertino townhome"; and (4) the March 30, 2021 orders for Family Code section 271 sanctions and to execute the deed to the "Cupertino townhouse" (H049072).[4]

This court ordered the two appeals—H049072 and H049187—to be coordinated for purposes of record preparation, briefing, oral argument and disposition.

## II. DISCUSSION

David presents three arguments on appeal: (1) the trial court should have denied Margaret's ex parte application for an order requiring him to sign the closing documents because there was no emergency or irreparable harm, and because the purchase agreement had expired and was therefore void; (2) this court should "restore [his] property rights" to Marigold; and (3) David did not receive proper notice of some of Margaret's sanctions requests and the trial court abused its discretion issuing the sanctions.

Margaret argues that the trial court did not abuse its discretion ordering David to sign the closing documents because she demonstrated irreparable harm and the purchase agreement was not void, and in any event, David's appeal of the court's order is moot because Marigold has been sold. She also argues that David received proper notice of the sanctions requests and the trial court did not abuse its discretion issuing the sanctions.

---

[4] David did not address all of these orders in his briefing on appeal. We consider those challenges forfeited. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 [appellate review is limited to issues which have been adequately raised and briefed] (*Baines*).)

As we explain below, we agree with Margaret that David's appeal of the trial court's order requiring him to sign the closing documents is moot. We also agree with Margaret that David received proper notice and the trial court did not abuse its discretion issuing the sanctions.

### A. Applicable law and standard of review

"A court will not grant ex parte relief 'in any but the plainest and most certain of cases.' " (*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257, quoting *Consolidated Const. Co. v. Pacific E. Ry. Co.* (1920) 184 Cal. 244, 246; *People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 951.) "For this reason, the rules governing ex parte applications in civil cases require that '[a]n applicant . . . make an affirmative factual showing . . . of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.' " (*Allstate*, *supra*, at p. 257, quoting Cal. Rules of Court, rule 3.1202(c); *Webb v. Webb* (2017) 12 Cal.App.5th 876, 879.) We review a trial court's order granting ex parte relief for an abuse of discretion. (*Allstate*, *supra*, at p. 257.)

With respect to mootness, "California courts will decide only justiciable controversies." (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*), citing *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 813.) "Justiciability thus 'involves the intertwined criteria of ripeness and standing. A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Wilson*, *supra*, at p. 1573, quoting *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 (*California Water*).) "[A] case that presents a true controversy at its inception becomes moot ' " 'if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character.' " ' " (*Wilson*, *supra*, at p. 1573, quoting *Wilson v. L.A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453.)

"The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief." (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574, citing *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227.) "If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot." (*Wilson*, *supra*, at p. 1574, citing *California Water*, *supra*, 253 Cal.App.2d at pp. 22-23, fn. 9.)

We review a trial court's decision to issue sanctions pursuant to Family Law Code section 271 for an abuse of discretion. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.)

### B. David's appeal of the trial court's order requiring him to sign the closing documents is moot (H049187)

As summarized above, escrow closed and the Marigold deed was recorded in February 2021. Because we cannot grant any effective relief, David's appeal of the trial court's order requiring the escrow documents to be signed is moot. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574.)

Margaret argues this case is analogous to *First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798. In that case, First Federal Bank of California obtained an order from the trial court mandating the sale of Fegen's house. Fegen appealed that order but did not post an undertaking and the house then sold pursuant to the order. The Court of Appeal dismissed the appeal as moot. As it explained, Code of Civil Procedure section 917.4 provides that perfecting an appeal of a judgment or order which directs the sale of real property " 'shall not stay enforcement of the judgment or order . . . unless an undertaking in a sum fixed by the trial court is given . . . .' " (*Fegen*, *supra*, at p. 800, quoting Code Civ. Proc., § 917.4.) Because Fegen had failed to post the undertaking, the order appealed from had not been stayed; accordingly, the court could not "fashion any order which would have the effect of reversing the trial court's order of

13

sale or otherwise preventing the sale of the [p]roperty, an event which has already occurred." (*Fegen*, *supra*, at p. 854.)

We agree with Margaret that the case is analogous and compels the same result here with respect to David's appeal of the trial court's order requiring the closing documents to be signed. Because David did not post an undertaking, the order was not stayed and the house was sold pursuant to the order. (See also *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 685 [issue was moot because sale of real property became final due to failure to obtain undertaking to stay trial court proceedings].)

David does not address *Fegen*. Instead, he contends that this court should "restore" his property rights to Marigold. However, he does not identify any authority for this court to take such an action after the sale to a third party has already been completed. We need not determine when an appellate court may have such power because we deem the argument forfeited on that point. (*Bains*, *supra*, 172 Cal.App.4th at p. 455.)

David argues that he attempted to post an undertaking but that the trial court refused to fix the amount, thereby precluding him from posting it and preventing a stay. David contends that, pursuant to Code of Civil Procedure section 917.4, the trial court was required to fix the amount of the undertaking upon request—that is, it "did not have [the] discretion to fail to fix any undertaking whatsoever."

However, even if the trial court had a ministerial duty to fix an undertaking upon request and failed to do so—an issue we do not decide—David's remedy was to seek a writ of mandamus compelling the trial court to act. (*Hinkel v. Crowson* (1920) 182 Cal. 68, 69; Cal. Prac. Guide Civ. App. & Writs Ch. 7-C ["If the trial court refuses to fix the amount of security, appellant's sole remedy is to petition the court of appeal for a *writ of mandate* compelling the trial court to act."].) David did not seek that remedy here.[5]

_____

[5] We therefore reject David's argument that "there [was] nothing more [he] could have done to prevent the sale of the home."

14

David also argues that, if we determine his appeal on this issue is moot, we should nevertheless consider the argument on the merits pursuant to an applicable exception. A reviewing court has the discretion to consider a moot appeal under three exceptions: (1) the case presents an issue of broad public interest that is likely to recur; (2) the parties' controversy may recur; and (3) a material question remains for the court's determination. (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 480.) David contends that the first of these exceptions applies here. As he explains it, this issue "is not uncommon in that the Court is working with two divorcing parties that cannot reach agreements on the division of their real property." However, David cites no authority or evidence suggesting that this is a common occurrence. (See *Sturgell v. Department of Fish & Wildlife* (2019) 43 Cal.App.5th 35, 47 [party could not identify any other similar instances in support of argument that issue was likely to recur].)

Instead, he warns that determining his appeal on this issue to be moot would mean that trial courts "could simply make orders on *ex parte* papers alone, without hearings, that certain things be done the very next day, and then proverbially shrug their shoulders that the complaint is 'moot' when damaged parties seek to challenge or appeal or otherwise protect their rights." We do not believe our courts would be so cavalier in exercising their duty to ensure the proper and orderly administration of justice. And where errors may occur, litigants have remedies available to them, which sometimes require prompt or immediate action to preserve them.

Lastly, even if the appeal were not moot, we would find that the trial court did not abuse its discretion in ordering that the escrow documents be signed. David argues there was no irreparable harm or imminent danger justifying ex parte relief. However, Margaret submitted evidence in support of her ex parte application which she claimed demonstrated "exigent circumstances" that warranted such relief. For example, as summarized above, she explained that David was "once again jeopardizing Marigold's

15

sale," and she feared the buyer would walk away if the court did not step in on an urgent basis to complete the sale. David does not address this evidence on appeal; in light of that evidence and the history of the dissolution proceedings, we would determine the trial court did not abuse its discretion granting the ex parte relief.

David also argues that ex parte relief was improper because the purchase agreement had expired and was void. However, he ignores the fact that the parties signed an addendum providing an extension to close the escrow to January 29, 2021. In addition, the trial court had previously ordered Marigold to be sold, and it had broad discretion under the Family Code to fashion orders enforcing its family law judgments, even if the original purchase agreement had expired. (*Cal-Western Reconveyance Corp. v. Reed* (2007) 152 Cal.App.4th 1308, 1318; Fam. Code, § 290.)

### C. *The trial court did not abuse its discretion awarding sanctions*

David contends that he did not receive proper notice of (1) Margaret's requests for sanctions for appellate attorney fees related to case No. H045527, which resulted in $55,000 in sanctions, or (2) Margaret's request for sanctions related to her February 1, 2021 ex parte application, which resulted in $19,000 in sanctions. He also argues that, even if notice was proper, the trial court abused its discretion in issuing those sanctions, as well as the $8,500 related to Margaret's July 2020 request for an order mandating the sale of Marigold, and the $2,400 related to her March 11, 2021 ex parte application for an order requiring David to vacate Marigold, all pursuant to Family Code section 271.

### 1. *$55,000 sanctions award (H049187)*

David argues he did not receive proper notice of Margaret's request for appellate sanctions because Margaret did not serve the motion "in its entirety" within the time period mandated by California Rules of Court, rule 3.1702(c)(1). That rule provides: "A notice of motion to claim attorney's fees on appeal—other than the attorney's fees on appeal claimed under (b)—under a statute or contract requiring the court to determine entitlement to the fees, the amount of the fees, or both, must be served and filed within

16

the time for serving and filing the memorandum of costs under rule 8.278(c)(1) in an unlimited civil case or under rule 8.891(c)(1) in a limited civil case." (Cal. Rules of Court, rule 3.1702(c)(1).) California Rules of Court, rule 8.278(c)(1) provides that a memorandum of costs must be filed within 40 days of issuance of the remittitur.

Here, the remittitur in case No. H045527 issued on February 24, 2020. The parties agree that the deadline for filing and serving the notice of motion pursuant to California Rules of Court, rule 3.1702 was June 15, 2020, in light of the Santa Clara County Superior Court's Covid-19 Emergency Relief General Orders. On April 2, 2020, Margaret electronically filed her request for an order for appellate sanctions, as well as a memorandum of points and authorities and supporting declarations. The trial court electronically served the request for order and Margaret's supporting declaration on David on May 1, 2020 and May 15, 2020, and set the hearing for August 20, 2020. On May 15, Margaret's attorney e-mailed David informing him that Margaret would be serving three additional declarations with attached redacted billing statements, and the memorandum of points and authorities, "in due course." She then served those materials on David via e-mail on June 26, 2020.

David thus argues that, because he did not receive those additional filings by June 15, 2020, he did not receive proper notice as required by California Rules of Court, rule 3.1702(c)(1). We disagree. First, as Margaret notes, rule 3.1702(c)(1), provides only that the "notice of motion" must be filed and served within the applicable time period. It does not provide that all moving and supporting papers must be filed and served within that time period. (Cal. Rules of Court, rule 3.1702(c)(1).) By contrast, Code of Civil Procedure section 1005 provides that, "[u]nless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed at least 16 court days before the hearing." (Code. Civ. Proc., § 1005, subd. (b).) David has not cited any authority supporting his interpretation of rule 3.1702 that "notice of motion" necessarily includes all moving and supporting papers.

17

Second, even if "notice of motion" in California Rules of Court, rule 3.1702 could be construed to include all supporting papers, David has not identified or even alleged any prejudice resulting from being served with the additional supporting papers on June 26. We can discern none.

David then argues that, even if notice was proper, the trial court abused its discretion awarding $55,000 in appellate attorney fees sanctions because the trial court "made no findings regarding the appellate litigation that occurred, or the merits or lack, or reasonableness or lack, thereof," and made no findings that his appeal "constituted sanctionable conduct under Family Code section 271." As he explains it, "the Trial Court completely failed to make any findings articulating what about David's conduct was Section 271 sanctionable in the first place."

The record demonstrates otherwise. The trial court's findings explained that the court reviewed Margaret's request for order and supporting filings, other relevant filings going back to 2017, the response and reply briefs, and oral arguments made at the hearing, and found that David's conduct "frustrated the policy of the law to promote settlement, and where possible, reduce the cost of litigation by encouraging cooperation between the parties and/or attorneys." The court further found that David had the ability to pay the reasonable sanctions, and that the award did not impose an unreasonable financial burden.

To the extent David contends these findings were not sufficiently detailed, he has not identified any authority supporting that contention. Nor has he addressed the substantial evidence in the record supporting the trial court's findings, including the materials the court expressly stated it reviewed and relied on. Although a Court of Appeal reviews findings of fact that formed the basis for an award of sanctions under the substantial evidence standard of review, we need not undertake that review here because David has forfeited the argument by not including any citations to the record or

18

supporting authority. (*In re Marriage of Corona*, *supra*, 172 Cal.App.4th at pp. 1225-1226; *Bains*, *supra*, 172 Cal.App.4th at p. 455.)

### 2. *$19,000 sanctions award* (*H049072*)

David argues he did not receive sufficient notice of the $19,000 in sanctions granted at the March 16, 2021 hearing. He contends that, although Margaret's February 1, 2021 ex parte application had included an unspecified request for "sanctions," nothing informed him "what amount of sanctions was requested against him, under what legal theory, for what alleged conduct." Accordingly, he argues, the generic request for sanctions was "legally insufficient" to provide him adequate notice of Margaret's request or to allow him an opportunity to properly respond.

As a threshold matter, we note that David does not appear to have raised this argument below, and he has thus forfeited it. (*Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 ["It must appear from the record that the issue argued on appeal was raised in the trial court. If not, the issue is waived."]; *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685 [contentions or theories raised for the first time on appeal are not entitled to consideration].) David has not pointed to any evidence in the record showing that he objected to the notice provided, including at the hearing on March 16, 2021.

Even if he had preserved his right to raise the argument on appeal, it has no merit. Family Code section 271 "does not specify the form of notice to be provided." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1529 (*Davenport*).) Instead, " 'the only procedural requirement' is ' "notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." ' " (*Ibid.*, quoting *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1495.)[6]

---

[6] Family Code section 271, subdivision (b), provides: "An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to (continued)

In *Davenport*, the court rejected an argument that the notice was insufficient because it failed to give notice of what the husband was seeking and did not set forth the precise amount he was seeking. (*Davenport*, *supra*, 194 Cal.App.4th at p. 1528.) The court held that the notice at issue "more than measured up," where it had been labeled " 'Respondent's Notice of Intention to Request Attorney Fees and Costs Pursuant to Family Code Section 271,' " and included a supporting declaration. As the court explained, "it is obvious from the title of the notice that [husband] was requesting attorney fees under section 271. This is sufficient." (*Id.* at p. 1529, citing *Levy v. Blum* (2001) 92 Cal.App.4th 625, 638 [notice must specify the code section or court rule relied on].) The court added that "[t]he notice must also advise of the specific grounds and conduct for which the fees or sanctions are sought, and must be directed to the specific person against whom they are sought." (*Davenport*, *supra*, at p. 1529, citing *In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1421-1422.)

Applying these standards here, we determine Margaret's notice was sufficient. In support of her February 1, 2021 ex parte application, Margaret submitted a detailed declaration setting forth the grounds for her request. For instance, she explained that, "Bringing Marigold to the brink of sale has been a long and arduous task. After signing a listing agreement with Grant Walters, readying the property for sale, listing the property (under threat of an ex parte), showing the property, accepting an offer (under threat of an ex parte), as more fully explained below, David has refused throughout these proceedings to cooperate with and facilitate Marigold's sale, he has engaged in numerous actions intended to sabotage Marigold's sale and discourage and scare away a Buyer who is willing to pay $3,525,000, $175,000 more than our asking price of $3,350,000. . . . [¶] Now David refuses to execute the escrow closing papers, once again jeopardizing

---

the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard."

Marigold's sale." Margaret also filed a supplemental declaration and income expense declaration on March 3, in advance of the March 16 hearing on her request for sanctions.[7] David cannot plausibly contend that he did not have sufficient notice of the grounds on which Margaret's request was based. (*Davenport*, *supra*, 194 Cal.App.4th at p. 1529.)

David then argues that, even if proper notice was provided, the trial court abused its discretion awarding the $19,000 in sanctions because "Margaret never specified how much she was requesting in sanctions in her pleadings, nor under what theory, [nor] what conduct allegedly warranted sanctions, nor how much she incurred in attorney fees due to that conduct." For the same reasons set forth above with respect to the notice that was provided, the record contradicts those assertions.

### 3. *$8,500 sanctions award* (*H049187*)

With respect to the $8,500 sanctions award related to the order mandating the sale of Marigold, David argues that the trial court "made no findings regarding David's conduct in support of Family Code section 271 sanctions [or] regarding David's ability to pay an award of sanctions or that an award would not constitute a financial hardship or unreasonable financial burden." Margaret concedes that the trial court did not make any written findings in connection with that order, which she attributes to the trial court's limited operations during the Covid emergency, the absence of a court reporter at the October 1, 2020 hearing, and the inability of the parties to agree on the terms of written findings.

Yet, to the extent David contends that the failure to make such findings requires reversal of an award of sanctions pursuant to Family Code section 271, he has not cited any authority for that proposition. Nor are we aware of any. Instead, a sanctions order under section 271 is reviewed for abuse of discretion and a court of appeal "will overturn

---

[7] At the February 16, 2021 hearing, the parties agreed to continue the hearing on Margaret's request for sanctions to March 16.

21

such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona*, *supra*, 172 Cal.App.4th at pp. 1225-1226; see also *In re Marriage of Quay* (1993) 18 Cal.App.4th 961, 970 [statute does not require a written order].) Applying that standard here, we determine the trial court did not abuse its discretion awarding the $8,500 in sanctions. As Margaret argues, the record contains ample evidence of David's resistance to the court-mandated sale of Marigold; viewing that evidence most favorably in support of the court's order and indulging all inferences in its favor, a reasonable judge could have relied on that evidence to award the $8,500 in sanctions. The trial court did not abuse its discretion.

### 4. *$2,400 sanctions award* (*H049072*)

David argues that the trial court abused its discretion by awarding $2,400 in sanctions related to Margaret's March 11, 2021 ex parte application for an order requiring David to vacate Marigold, because she had only asked for $2,000. According to David, it was "inherently arbitrary and capricious" for the court to order an amount beyond what Margaret had requested.

Again, David cites no legal authority in support of his argument. We deem it forfeited. (*Baines*, *supra*, 172 Cal.App.4th at p. 455.)

### III.    DISPOSITION

David's appeal of the trial court's February 1, 2021 order is dismissed as moot. In all other respects, the appealed orders are affirmed.

22

_____

                             Wilson, J.

WE CONCUR:

_____

                      Bamattre-Manoukian,  Acting P.J.

_____

                      Danner, J.

Critzer v. Critzer
H049072, H049187