Filed 7/10/20

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT


(Sutter)

----


| | |
|---|---|
| GAVIN NEWSOM, as Governor, etc., | C092070 |
| Petitioner, | (Super. Ct. No. CVCS200912) |
| v. | |
| THE SUPERIOR COURT OF SUTTER COUNTY, | |
| Respondent; | |
| JAMES GALLAGHER et al., | |
| Real Parties in Interest. | |


ORIGINAL PROCEEDING in mandate. Stay issued. Petition granted with directions. Perry Parker, Judge.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman, Jay C. Russell and John W. Killeen, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

James Gallagher, in pro. per., and Kevin Kiley, in pro. per., for Real Parties in Interest.

This petition for writ of mandate by Governor Gavin Newsom challenges a decision by respondent Sutter County Superior Court granting a temporary restraining order and suspending an executive order of the Governor entered pursuant to his emergency powers. This petition does not, however, require this court to weigh in on the scope or breadth of the Governor's emergency powers. Rather, it raises narrow issues concerning an expedited, "ex parte" proceeding for interim declaratory relief and a temporary restraining order initiated by two members of the California State Assembly, real parties in interest James Gallagher and Kevin Kiley.

As we shall explain, there was no basis for the superior court to grant real parties in interest relief using ex parte procedures prescribed by California law. The hearing on the ex parte application, conducted only one day after the underlying action was filed in superior court, was held without proper notice to the Governor or his appearance. Apart from these procedural deficiencies, real parties in interest also failed to make the requisite substantive showing for use of an ex parte proceeding. In short, the real parties in interest failed to present competent evidence establishing imminent harm from the Governor's executive order requiring immediate action.

BACKGROUND

In May the chairs of the Assembly and Senate committees that consider election-related matters prepared a formal letter to the Governor indicating they were working on legislation to ensure Californians could vote by mail in light of the emergency occasioned by COVID-19.[1] The letter indicated the legislation would ensure adequate ballot drop-

---

[1] Real parties in interest object to us considering material that was not before the trial court that has been presented with the Governor's petition. As we explain, the Governor did not receive adequate notice of the hearing and was unable to respond or present documentation to the trial court before it acted. Accordingly, documents that would have been submitted to the superior court may reasonably be referenced for the limited

2

off locations and regulate safe in-person voting while ensuring a minimum standard of one polling location per 10,000 voters open for four days statewide. The committee chairs encouraged the Governor to issue an executive order allowing all Californians to vote by mail, noting: "Three-quarters of California voters already receive a mail ballot. Let's mail a ballot to the rest."

The Governor issued Executive Order No. N-64-20 on May 8, 2020, which required all voters to be provided vote-by-mail ballots. That order affirmed, however, that the administration continued to work "in partnership with the Secretary of State and the Legislature on requirements for in-person voting opportunities and how other details of the November election will be implemented" and "[n]othing in this Order is intended, or shall be construed, to limit the enactment of legislation on that subject."

On June 3, 2020, the Governor signed the order at issue here, Executive Order No. N-67-20, which will be referenced throughout as simply the "Executive Order." The Executive Order affirms that all counties would mail eligible voters vote-by-mail ballots and provides for the use the Secretary of State's vote-by-mail ballot tracking system. It also provides additional terms related to the number and operation of polling places (including opening at least one polling place per 10,000 registered voters for four days) and vote-by-mail ballot drop-off locations, and it states in-person public participation in public meetings or workshops would not be required. The Executive Order identifies statutory provisions that are displaced pursuant to its provisions. But it also affirms the administration is "working in partnership" with the Legislature and Secretary of State and "[n]othing in this Order is intended, or shall be construed, to limit in any way the enactment of legislation concerning the November 3, 2020 General Election."

---

purpose of demonstrating why the trial court's precipitous ex parte ruling was inappropriate.

3

At the time the Governor issued the Executive Order, two bills pending in the Legislature addressed the substance of the Governor's Executive Order: Assembly Bill No. 860 (2019-2020 Reg. Sess.), which would ensure all California voters were provided ballots in advance of the election to vote by mail, and Senate Bill No. 423 (2019-2020 Reg. Sess.), which would govern those remaining aspects of the election that are yet to occur.[2] We take judicial notice of the versions of these bills from the Legislature's official records, which are attached as exhibits to the petition.

The issue presented concerns an order of the Sutter County Superior Court, entered on June 12, 2020, granting a temporary restraining order against the Executive Order, finding it constituted "an impermissible use of legislative powers in violation of the California Constitution and the laws of the State of California." The remaining factual and procedural background pertinent to our disposition of this matter, namely the legal proceedings initiated by real parties in interest to challenge the Executive Order and the instant petition, are incorporated in the following discussion.

DISCUSSION

Real parties in interest filed a complaint for declaratory judgment and injunctive relief in Sutter County Superior Court on June 11, 2020, challenging the Executive Order. Real parties in interest also filed an ex parte application seeking interim declaratory relief and a temporary restraining order.

Various court rules govern ex parte proceedings, which are designed to afford relief on an essentially emergency basis. "A court will not grant ex parte relief 'in any but the plainest and most certain of cases.' " (*People ex rel. Allstate Ins. Co. v.*

---

[2] Petitioner points out that Senate Bill No. 423 does not address the portion of the executive order concerning in-person public meetings required by the Voter's Choice Act (Stats. 2016, ch. 832, §§1-9) because the counties to which this requirement applies have already finalized election plans, though they will continue to hold additional workshops and other forms of outreach.

*Suh* (2019) 37 Cal.App.5th 253, 257 (*People ex rel. Allstate Ins. Co.*).) Substantively, "[a]n applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Cal. Rules of Court, rule 3.1202(c) [further undesignated rule references are to the California Rules of Court]; see also Code Civ. Proc., § 527.) "A trial court should deny an ex parte application absent the requisite showing." (*People ex rel. Allstate Ins. Co.*, at p. 257.) Further, entry of any type of injunctive relief has been described as a delicate judicial power, to be exercised with great caution. (*Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 148.) This is doubly true when granting relief on an expedited basis using an ex parte request for a temporary restraining order rather than a properly noticed preliminary injunction.

In his declaration supporting the request for ex parte relief, real party in interest James Gallagher did not reference anything the Executive Order would immediately compel. Rather, he broadly asserted it created "confusion as to what rules will be applicable to the November 3, 2020 election: the Executive Order, existing statutory law on the books, or the provisions of [bills] pending in the Legislature. Elections officials need to begin planning so that they can conduct the election accordingly."

Gallagher did not point to any impending election timelines or deadlines affected by the Executive Order, which is not surprising since the ballot materials had not been finalized and the Executive Order did not shorten the timeline for doing so. (See, e.g., Cal. Const., art. II, § 8, subd. (c); Elec. Code, § 9040; Gov. Code, § 88006.) Nor did Gallagher reference particular election preparations that were ongoing in Sutter County or in any other county that would be impacted by the Executive Order. Rather, he asserted ambiguously and without elaboration: "I am aware, through both conversations and letters I have received, that elections officials in my legislative district have concerns over how elections are to be conducted in the November 3, 2020 election. They are

5

hoping to have these concerns addressed in the legislative process." Real parties in interest failed to attach any supporting declarations from these "election officials," nor did Gallagher describe specific information provided by election officials. The only supporting declaration included with the ex parte request for a temporary restraining order was devoid of "competent testimony based on [Gallagher's] personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte." (Rule 3.1202(c).)

Compounding the lack of competent evidence of irreparable harm or immediate danger, real parties in interest did not properly notify the Governor of the ex parte hearing. Rule 3.1203(a) provides that a party wishing to use the expedited ex parte hearing process must notify all parties *no later* than 10:00 a.m. the day before, absent a showing of exceptional circumstances justifying a shorter time for notice. Real parties in interest sent an e-mail to attorneys at the Department of Justice the morning before the hearing; they concede the e-mail was sent just a few minutes before 10:00 a.m. Later that morning, an attorney for the Department of Justice responded that the Department of Justice was not authorized to accept service on behalf of the Governor and that he must be served directly through his legal affairs department. Real parties in interest did not do that until the afternoon before the hearing. Further, what was ultimately served on the Governor did not include a copy of the proposed order, as is required by the rules of court. (Rule 3.1201.) It is that order that respondent superior court signed without modification and which, as referenced above, suspends the Executive Order and states in unambiguous terms that the Governor abused his authority.

Real parties in interest do not dispute the Governor was not served with a copy of the proposed order but emphasize the e-mail notice to the Department of Justice did include a copy of the proposed order. They argue the notice given was sufficient regardless of whether the Department of Justice was authorized to accept service for the Governor. Real parties in interest suggest that given the "short notice" in the context of

6

an ex parte hearing, "it would seem more reasonable to give notice to the person who is actually going to represent the party at the hearing." Real parties in interest emphasize the Department of Justice may and ultimately did serve as counsel for the Governor in this matter and suggest the court take "judicial notice" of many past actions when this has occurred. But, prior to representation by the Department of Justice, it is the Governor who must be noticed directly and can then decide how to proceed in the matter, as real parties in interest were promptly advised by the Department of Justice.

The argument of real parties in interest's that this essentially elevates form over substance ignores the fact that the decision to request ex parte relief on such an expedited basis and to provide little notice to the Governor was a decision they themselves made. The goal of ex parte procedure may be expedited relief, but the procedures are designed to ensure the participation, if possible, of the opposing party. To that end, the person giving notice must "[a]ttempt to determine whether the opposing party will appear to oppose the application" and must in fact inform that party or show that the "applicant in good faith attempted to inform the opposing party but was unable to do so." (Rule 3.1204.) There was no impediment to real parties in interest providing proper notice to the Governor.

Having not been properly notified of the ex parte hearing, the Governor did not appear in respondent superior court. Nevertheless, without any evidence that would support the immediate need to act at that time and without consideration of the Governor's position, the superior court simply signed the proposed order presented by real parties in interest.

When the Governor promptly sought relief by petition for writ of mandate, this court stayed respondent superior court's decision and precluded further injunctive relief, but otherwise allowed the superior court, with the Governor's participation, to consider

the merits of the real parties in interest's argument.[3] Shortly thereafter, the Legislature passed, and the Governor signed Assembly Bill No. 860 as an urgency measure, which ensures California voters will be provided ballots to vote by mail in the November 3, 2020 election and sets forth related procedures for vote by mail. (Stats. 2020, ch. 4, §§ 1-8.) Consequently, the issue of whether the Governor's Executive Order exceeds his authority is partially but not entirely moot, as both parties have agreed in supplemental briefing. There remain substantive issues governing the conduct of the election, most notably how many polling stations will be open and in what manner. Those issues may likewise become moot if Senate Bill No. 423 also passes and is signed by the Governor. Regardless, the current circumstances present a much different case than would exist if the Legislature and Governor were at an impasse over vote by mail.

---

[3] Following issuance of the notice that this court was considering issuing a peremptory writ in the first instance, real parties in interest suggest the matter could be deemed moot. Real parties in interest reason that since the superior court vacated a hearing set for June 26, 2020, on the order to show cause it issued, and since a temporary restraining order must be returnable not later than 15 days pursuant to Code of Civil Procedure section 527, the order has "expired." This is incorrect as a matter of fact and law.

First, this court entered only a temporary stay pending receipt of opposition and further court order. The Governor emphasizes that the superior court has not otherwise vacated its temporary restraining order. Were this court to vacate the temporary stay, the temporary restraining order would be in effect by operation of law pending further hearing in this matter, and the superior court could promptly set the matter for a hearing on whether to issue an injunction.

Further, nothing in Code of Civil Procedure section 527 states that a temporary restraining order, even one that is not stayed as here, expires 15 days from the date of its issuance. The statute provides only that if a temporary restraining order is granted without notice to the opposing party, the superior court must set the matter for hearing within 15 days (or 22 days if good cause appears) and that the hearing may be further delayed by way of continuance. (Code Civ. Proc., § 527, subd. (d)(1), (4).) Moreover, real parties in interest continue to maintain the superior court properly granted relief following adequate notice at the ex parte hearing.

8

As the Executive Order stated by its own terms, pending legislation was meant to ultimately govern the election. If, for some reason, a substantive conflict does arise between the Governor's emergency authority and the Legislature, that could present issues requiring careful consideration and ultimate resolution by the courts. However, the superior court's order was not the product of such consideration.

## DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue the peremptory writ forthwith. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.)

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order of June 12, 2020, granting the ex parte application for "declaratory relief and temporary restraining order and order to show case" and to enter a new and different order that denies the ex parte application for relief. The stay previously issued by this court will be vacated upon finality of this opinion. The Governor shall recover his costs in this original proceeding. (Rule 8.493.)

/s/
RAYE, P.J.

We concur:

/s/
ROBIE, J.

/s/
RENNER, J.

9