Filed 1/23/26  Werber v. Armandpour CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| FRED A. WERBER,<br><br>　　Petitioner and Respondent,<br><br>　v.<br><br>ROBIN ARMANDPOUR,<br><br>　　Respondent and Appellant,<br><br>STEVEN ROSS FREED,<br><br>　　Respondent. | B345274<br><br>(Los Angeles County<br>Super. Ct. No. 23STPB02086) |

　　APPEAL from a judgment of the Superior Court of Los Angeles County, Lynn H. Scaduto, Judge.  Affirmed.

　　Greenberg Traurig, Scott D. Bertzyk and Andrea Carmona for Appellant Robin Armandpour.

　　Holland & Knight, Vivian L. Thoreen, Jonathan H. Park and Lauren N. Mortiz for Respondent Fred A. Werber.

　　Hill, Farrer & Burrill, Robert C. Eroen for Respondent Steven Ross Freed.

_____

Siblings Fred Werber and Robin Armandpour have been litigating disputes over their respective gift trusts since their father's death in 2021. In December 2024, one facet of that litigation reached a tipping point: Robin, as a co-trustee of Fred's gift trust, refused to distribute annual income to Fred, the trust's sole beneficiary. If the distribution did not occur by year's end, the trust would face negative tax consequences and the S Corporation whose shares the trust held would automatically convert to a C Corporation. The result of that, in turn, would have been even more negative tax consequences for the corporation and its shareholders, as well as potential legal liability for the co-trustees. Fred thus moved ex parte to compel the annual income distribution. We agree with the trial court that the ex parte application presented a discrete issue that did not require an evidentiary hearing and did not implicate the larger issues underlying the siblings' litigation. Accordingly, we find the trial court acted well within its discretion by compelling the annual income distribution, and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1999, Ben Werber created irrevocable gift trusts for his two children: Fred Werber and Robin Armandpour. Fred is the sole beneficiary of his trust, the "Fred A. Werber Trust"; and Robin is the sole beneficiary of hers, the "Robin Werber Armandpour Trust." Fred, Robin, and Steven R. Freed (the son of one of Ben's business partners) are co-trustees of Fred's trust. The co-trustees must act unanimously. Robin's son, Evan Armandpour, is the contingent remainder beneficiary of Fred's trust, meaning that Evan receives the trust principal and undistributed income after the death of Fred and Fred's wife.

Ben died in 2021, and his wife died in 2022. Since then, the siblings and Evan have been in near constant litigation involving their respective trusts.[1] This appeal focuses on a single ex parte application and order, and we limit our factual recitation and discussion accordingly. We further emphasize that our analysis is not intended to address any issues outside of the ex parte application.

Fred's trust acquired stock of an S corporation, Steward Realty Management Corporation (Steward). When Ben died in 2021, an estate planning attorney advised that Fred's trust needed to make changes to remain eligible as an S corporation shareholder. One method of doing so is by making a Qualified Subchapter S Trust (QSST) election on the trust's behalf. A QSST election treats the income beneficiary as the owner of the trust's S Corporation stock and requires annual distribution of all income to the income beneficiary.

The three co-trustees agreed to make a QSST election for Fred's trust in January 2022. The co-trustees severed Fred's trust into both an exempt trust and a non-exempt trust, with the non-exempt trust receiving the Steward S corporation stock. A QSST election for Fred's non-exempt trust was then filed with the Internal Revenue Service.[2]

---

[1] We deny as irrelevant Robin's request for judicial notice of pleadings filed in connection with the Robin Werber Armandpour Trust in Los Angeles County Superior Court Case No. 22STPB09575 and pleadings filed in connection with Fred's trust after the December 2024 ruling on the ex parte application that is the subject of this appeal.

[2] The co-trustees also agreed to sever Robin's gift trust into an exempt trust and a non-exempt trust. Robin's Steward shares

In 2022, Robin told the other co-trustees that she would not agree to the required annual income distribution from Fred's non-exempt trust to Fred, despite the QSST election requirement. Failure to make the annual income distribution to Fred would have resulted in negative tax consequences for the trust and Steward would lose its S corporation status. In December 2022, Robin relented and authorized the 2022 distribution, thus preserving the QSST election for the non-exempt trust and Steward's S corporation status.

In 2023, Robin again told the co-trustees that she would not agree to the required annual income distribution. At year's end, however, Robin again relented and authorized the distribution to preserve the non-exempt trust's QSST election.

In November 2024, Robin told the co-trustees that she would not agree to the required annual distribution, "which will result in the termination of the Trust's status as a QSST." As a consequence, Steward's S corporation status would have terminated automatically. On December 9, 2024, Fred's counsel conveyed the "immediate, adverse and undesired tax consequences" to Robin's counsel and warned that refusal would subject the co-trustees to liability to Steward and its shareholders for those negative tax consequences.

As of December 16, 2024, Robin had not responded. Therefore, Fred filed an ex parte application to compel Robin's assent to the required annual income distribution to Fred from

---

were allocated to her exempt trust, and the co-trustees filed an Electing Small Business Trust election with the IRS for Robin's Steward shares. That election does not require annual income distributions to the trust's beneficiary. (Int.Rev. Code, § 1361(e).)

the non-exempt trust.  The application relied on the non-exempt trust's QSST election the co-trustees previously made.

Robin opposed the application later that day.  Robin framed the issue as involving contested factual questions regarding the trustor's intent because the trust's terms grant the co-trustees discretion to distribute trust income.  Evan joined Robin's opposition.  A declaration from each party's counsel supported their respective pleadings.

On December 20, 2024, the court held a hearing on Fred's ex parte application.  The court heard argument from all counsel but did not conduct an evidentiary hearing.  The court agreed that the application presented a "discrete issue" dealing with preserving the QSST election, which did not implicate the larger contested issues in the litigation around the trustor's intent.  The court granted the application and issued a minute order.  On December 31, 2024, the court issued a formal order granting the application.

Robin timely appealed.

## DISCUSSION

Robin alleges the probate court erred in four discrete ways in granting the ex parte order underlying this appeal.  Robin alleges the probate court erred by: (1) failing to hold an evidentiary hearing on contested factual issues, (2) improperly substituting its judgment for one of the co-trustees, (3) misinterpreting the trust instrument, and (4) granting emergency relief where Fred caused the delay.  Robin's contentions reflect a fundamental misunderstanding about what the probate court did and did not decide.

"We review a trial court's ruling on an ex parte application for abuse of discretion." (*People Ex Rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257.) As discussed in detail below, the probate court did not need to hold an evidentiary hearing because the narrow issue presented by Fred's ex parte application was not contested. The probate court has authority to decide issues necessary to supervise the administration of the trust. The court did not make a finding that all trust distributions are mandatory and therefore did not misinterpret the trust document. And Fred's delay in bringing the application was not unreasonable based on the parties' past conduct. Thus, we find no abuse of discretion in the probate court's order.

## I. The Ex Parte Petition Presented a Limited Issue On Which There Was No Factual Dispute

In his ex parte application, Fred presented a discrete issue and requested two limited orders: (1) compelling Robin's consent to the distribution of the 2024 net income from the non-exempt trust to Fred, and (2) compelling the distribution of said income by December 31, 2024. The emergency basis for this ex parte relief was also clearly articulated by Fred: "If the 2024 net income is not distributed to Fred by December 31, 2024 in compliance with the tax laws," a cascade of "automatic, immediate, and irreparable tax consequences" will occur and "expose the Co-Trustees of the Non-Exempt Trust to liability."

From the outset, Robin misconstrued the ex parte petition to be something else entirely. The first section of Robin's opposition to the ex parte application states as follows: "First, Fred is asking the Court to resolve a contested issue ex parte and without an evidentiary hearing. The Court presently has before it multiple petitions teeing up the precise issue of whether the

6

relief sought via Fred's ex parte application is mandated by the Trust or whether the distribution of all income is discretionary." Robin goes on to articulate several of the underlying disputes among the parties, including whether income distributions are discretionary or mandatory, which Robin alleges, "will turn on the Court's determination of the Trustor's intent—a quintessential fact issue." Notably, Robin did not dispute the cascade of "automatic, immediate, and irreparable tax consequences" if the relief Fred requests was not granted.

The ex parte application references the trustor's intent only in passing, and none of the relief requested by Fred is premised on the trustor's intent. Nor does the requested relief require the court to determine the trustor's intent, or to decide whether income distributions writ large are mandatory or discretionary under the terms of the trust.

At the hearing on the ex parte petition, Fred's counsel confirmed the limited scope of the requests: "There are a number of undisputed facts at issue in this ex parte application. We are not here to argue and try to obtain an ex parte order regarding what the settlor[']s Ben Werber's intent was. We're not interpreting the language of the trust. We're not doing any of that. . . . What we are talking about is based on a number of undisputed facts applying federal tax law to those undisputed facts, and what will happen [if] the law is not followed. So, we agree to disagree on the settlor[']s intent. That is a primary issue in the underlying litigation between and among all of these parties."

In addition, counsel for co-trustee Steven also clarified the distinction between the issues framed by the underlying petitions and the "discrete" issue presented in the ex parte application.

7

What are the undisputed facts?  In August 2022, a QSST Election was filed with the Internal Revenue Service for Fred's non-exempt trust, which references Steward as the S corporation in question.  The QSST Election specifically states:  "The Non-Exempt Trust is required to distribute all of its income currently, or the trustee will distribute all of its income currently, if not so required by the terms of the trust, to the current income beneficiary."  Robin consented to the QSST Election.

Federal tax regulations specify that one of the requirements for a QSST trust is that all income is distributed to one individual.  (26 C.F.R. § 1.1361-1(j)(1) (2025).)  If a QSST trust fails to meet these requirements, the trust will lose its QSST status as of the first day of the following year.  (26 C.F.R. § 1.1361-1(j)(5) (2025).)  If a QSST trust loses its QSST status, it will no longer be a permitted shareholder of the S corporation whose stock it holds, which in turn will terminate the S corporation tax status for the corporation.  (Int.Rev. Code, § 1361(d)(2).)

As noted in the ex parte application, if Steward's status as an S corporation is terminated, Steward will be taxed as a C corporation.  "Unlike S corporations, C corporations are subject to two layers of taxation, with the income being taxed at both the entity level and the shareholder level. . . .  Thus, the C corporation tax structure would substantially increase the overall tax burden as income is taxed both at the entity level and then again at the shareholder level."  Steward's shareholders include Fred's Trust, Robin's Trust, and members of Steven's family.

Robin did not contest any of these facts nor argue a contrary analysis of federal tax law.  Thus, the undisputed facts demonstrate that if the non-exempt trust's 2024 net income was

not distributed to Fred by the end of 2024, Steward would lose its S corporation tax status, causing a significantly increased tax burden on all of Steward's shareholders, including Fred's Trust, Robin's Trust, and members of Steven's family. Those are the relevant facts for purposes of the ex parte application.

Further, when announcing her ruling, the probate judge confirmed her understanding of the "discrete issue" presented by the application. The court stated: "I'm going to grant the ex parte application as prayed. . . . The Court compels Robin's consent as the co-trustee to the distribution of all the 2024 net income of the Non-Exempt Trust to Fred who is the sole income beneficiary. . . . The Court compels the co-trustees of the Non-Exempt Trust to distribute the 2024 net income to Fred by December 31st, 2024, *to avoid the tax consequences* that have been, I think, described here by two different lawyers in a very similar fashion." (Italics added.)

In her reply brief, Robin raises a host of issues, which she alleges are disputed facts presented by the application. We address these arguments in turn. First, Robin alleges that Fred's application requires the resolution of the following question: "Does Fred's Trust mandate that all net income from all assets must be distributed each year, or does it provide that distributions of income from non-subchapter S assets are discretionary?" Whether Fred's Trust provides that net income distributions are mandatory or discretionary is irrelevant to the resolution of this application. What matters is the federal tax requirement that all net income from the non-exempt trust must be distributed each year in order to maintain its QSST trust status.

9

Next Robin alleges, "[d]id Fred's Trust require that the subchapter S asset he claims will be imperiled be segregated in its own subtrust and would Fred's compliance with that requirement have mooted the claimed adverse consequences?" Again, whether Fred's Trust requires that certain assets be segregated into their own subtrust is irrelevant to the tax consequences discussed above. Fred's compliance with that requirement is also irrelevant for the purpose of resolving the ex parte application.

Robin also alleges the following factual issue is relevant to the ex parte application: "Did Fred breach the Trust to bring about the 'emergency' he invoked below?" However, whether Fred breached the trust is not an issue for resolution on this application, although it may be critical to resolution of the underlying litigation.

Because we find that resolution of the ex parte application did not turn on contested factual issues, the authority cited by Robin regarding the need for an evidentiary hearing on contested fact issues in probate proceedings is misplaced. The narrow issue presented by the application was uncontested, and therefore, "[a]n affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code." (Prob. Code, § 1022.) Fred's application was supported by the declaration of his counsel. The fact that Robin attempted to muddy the waters by raising irrelevant facts that are contested in the underlying litigation is not persuasive, and we find no abuse of discretion.

10

## II. The Court Has Authority to Decide Issues Necessary to Supervise the Administration of the Trust

Next, Robin argues the probate court erred in substituting its judgment for Robin's exercise of her discretion as trustee. We do not dispute that the trust instrument grants the trustee "total, complete and absolute discretion" to make distributions of trust income. Nor do we dispute that the trust also has specific mandatory income distribution provisions concerning S corporations, which provide that "[i]ncome of an S Trust shall be distributed to, and only to, the S Trust's beneficiary[.]"

The parties do not dispute that the non-exempt trust held shares of Steward, an S corporation. Thus, as to the income generated by Steward, the co-trustees do not have discretion. Rather, the trust instrument mandates that "income of an S Trust *shall* be distributed to . . . the S Trust's beneficiary." (Italics added.) Put differently, there was no interference with Robin's discretion when she lacked discretion in the first place.

Although not emphasized by either party on appeal, the non-exempt trust appears to have held assets other than Steward based on the allocation of assets between the exempt and non-exempt trusts at the time the co-trustees severed Fred's trust in 2022. Thus, to the extent the non-exempt trust held assets other than shares of Steward in 2024, distribution of income from those assets rests in the co-trustees' discretion per the terms of the trust.

Probate Code section 17206 grants the probate court broad discretion to supervise the administration of trusts. "The court in its discretion may make any orders and take any other action necessary or proper to dispose of matters presented by the petition[.]" (§ 17206.) Fred's ex parte application was brought

under this specific Probate Code section.  Thus, the probate court has "inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust."  (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 951.) "This inherent equitable power of the probate court has long been recognized to encompass the authority to take remedial action." (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427.)

Here, where the failure to act would have dire tax consequences not only for the parties to this action but also to third-party shareholders of Steward, the probate court acted well within its "inherent power" to grant the ex parte application, and we find no abuse of discretion.

## III.  The Probate Court Did Not Interpret the Terms of the Trust

Next, Robin argues that the probate court misinterpreted the trust instrument.  We find this argument perplexing, as the probate court made no findings regarding the terms of the trust or the trustor's intent.  The minute order entered by the court reflects that "[t]he Court finds that sufficient evidence has been provided to grant the matter on calendar this date based upon the reading of the moving papers and consideration of all presented evidence."  The probate court then granted the requests presented in the application, namely, compelling Robin's consent to the distribution of all 2024 net income of the non-exempt trust to Fred by December 31, 2024.  The formal order entered by the probate court was similarly limited.

At the ex parte hearing, the probate court made no mention of the trustor's intent nor the terms of the trust.  Rather, the court granted the ex parte application "as prayed" and ordered precisely the relief requested in the application – to compel

12

Robine's consent to the distribution and to order the distribution to take place by December 31, 2024.

Because the probate court did not interpret the terms of the trust or make any findings regarding the trustor's intent, there was no abuse of discretion and no error compelling reversal.

## IV. Any Delay in Presenting the Ex Parte Application Was Not Unreasonable

Finally, Robin argues that Fred was responsible for the delay in seeking an emergency order until the "eleventh hour," and therefore there were no grounds for equitable relief. As noted above, Fred and Robin went through this song and dance in 2022 and 2023, and both times Robin ultimately agreed to make the distributions at the end of the year. While it is true Fred could have sought this relief earlier in the year, we find that Fred's decision to wait until December was not unreasonable in light of Robin's capitulation at the end of the year in 2022 and 2023. Fred could reasonably believe that Robin would again agree to make the distributions at the end of 2024, as she had agreed the prior two years. When Robin had not responded by December 16, 2024, Fred reasonably concluded he could wait no longer and filed the ex parte application.

The application was supported by the declaration of Fred's counsel, which provided "competent testimony based on personal knowledge of irreparable harm," (Cal. Rules of Court, rule 3.1202(c)), namely the cascade of "irreparable and substantial negative tax consequences for Steward and its shareholders . . . exposing the Co-Trustees of the Non-Exempt Trust to liability." Thus, Fred presented the necessary basis for equitable relief.

13

We find no abuse of discretion in the probate court's order granting relief under these circumstances.

## DISPOSITION

The judgment is affirmed.  Fred shall recover his costs on appeal.


                                        UZCATEGUI, J.*

We Concur:


        STRATTON, P. J.


        VIRAMONTES, J.

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.